## RUNKLE, LICHTENSTEIN ET AL., APPELLANTS, *v.* GAYLORD, RESPONDENT.

## RESPONSE TO PETITION FOR REHEARING.

A mortgagee or trustee in possession, with power to sell, must sell fairly and for the best price he can obtain.  He is not at liberty to sell to the first person whom he finds willing to pay his debt and take the property without any inquiry as to whether the property is worth more than the debt.

One who purchases from a mortgagee in possession, with power to sell, and who knows the mortgagee is sacrificing the property, selling it at a small fraction of its value, and that, too, when he could collect his debt out of the rents in from two to five months without sale, is not an innocent vendee and will not be protected in his purchase. He can occupy no better position than that of an assignee of the mortgage debt.

If he gets a third party, who is ignorant of the fact that the vendee is merely a mortgagee or trustee, to make the purchase, advance the money for him and take the deed to himself (the third party), this will not alter the effect of the deed after the nominal purchaser transfers the title to his principal for whom he made the purchase.

The deed can only operate as a security for the advance made by the nominal purchaser. When that money and interest is paid by the beneficial purchaser, then he stands just as if he had made the purchase himself without the intervention of a third party.

The nominal purchaser, after getting his money and conveying the property to his principal by deed of bargain and sale, would not be liable on those warrantees, which are by statute implied in every deed of bargain and sale upon the land, being recovered from his vendee by the original mortgagor.

APPEAL from the District Court of the First Judical District of the Territory of Nevada, Hon. J. W. NORTH presiding.

This case was originally brought by Gaylord as plaintiff, in the Territorial Court for Storey County. The judgment was in his favor.

The defendants brought the case by appeal before the Supreme Court of the Territory. In that Court the position of the parties were changed, and it stood on the Calendar as "*Runkle, Lichtenstein et al.*, Plaintiffs in Error, *v. Gaylord*, Defendant in Error."

The other facts of the case are sufficiently shown in the opinion.

*Anderson & Lansing* and *J. H. Hardy*, for Plaintiffs in Error.

*Ralston & Griffith*, for Respondents.

The petition for rehearing is principally an argument as to the facts and deductions from testimony; it cannot readily be abridged so as to bring it within a proper compass for this report. The principal points are noticed in the opinion of the Court.

Opinion by BEATTY J., BROSNAN, J. concurring.

This cause was heard and determined by the Supreme Court of the Territory of Nevada, and after its determination a petition for rehearing was presented to that Court, which was never acted on. It now comes before us to determine whether that petition shall be granted or refused. The opinion of the late Court is not to be found among the files of the Court, and we are therefore under the necessity of treating this case almost as if it were before us on trial.

The principal facts of the case are these :

The plaintiff, Gaylord, in the month of June, 1860, was the owner of a certain town lot in Virginia, and being indebted to George W. Durgan in the sum of two hundred and forty dollars, executed his note to Durgan for that amount, and secured the note by mortgage on his city lot.

In April, 1861, plaintiff was in bad health, and fearing a sudden death gave an absolute deed to Durgan for the lot— Durgan accepting the deed and promising to sell the lot and remit the proceeds (after deducting the amount of his note) to the family of Gaylord in Illinois. When the absolute deed was delivered, Durgan still retained the note and mortgage. Durgan, after this, left the Territory, and Gaylord continued to enjoy and receive the rents and profits of the property, but in so doing professed to act as the attorney of Durgan. In November, 1861, Durgan appointed one C. H. Fish his attorney, with power to collect debts and execute conveyances of real estate.

In January or February, 1862, Durgan instructed his attorney, Fish, "to raise the money on said property to pay the said note of two hundred and forty dollars, and also two other notes of other parties, amounting to about five hundred dollars, in all to about seven hundred and fifty dollars." This quotation is from the finding of the referee. We are utterly unable, from the pleadings, from the findings of the facts, evidence, or statement of facts made by counsel, to tell what connection these two notes for "about five hundred dollars " had with the business of Gaylord and Durgan. Sometimes we have been inclined to believe that these two notes were notes against

Gaylord, which Durgan had bought and got assigned to himself, and was desirous of having tacked on to his mortgage. From other expressions, especially in petition for rehearing, we would infer that these were notes due from Durgan to strangers to this record.

Fish was instructed to get a new note from Gaylord covering the whole seven hundred and fifty dollars, or in case of refusal to sell the lot for *that amount.* Gaylord refused to execute the new note (for what reason is nowhere stated), and Fish then attempted to raise the seven hundred and fifty dollars on the property. After trying in other quarters he applies to Lichtenstein, who was then a tenant in possession of the lot, paying one hundred and fifty dollars per month. Lichtenstein's lease purported to be made by Durgan, through his attorney in fact, Gaylord. Lichtenstein was informed by Fish that he had been instructed by Durgan " to raise the money on the plaintiff's note and the other notes as before stated, and to execute a deed of the property upon receiving the amount due on said notes. He showed his power of attorney and plaintiff's deed to Durgan. He also showed the notes to Lichtenstein, and figured up the amount due on them, and stated to him that he would execute a deed for the amount so found to be due on them."

This quotation is from a finding of the referee. Two weeks after this conversation between Fish and Lichtenstein, the latter came with Runkle to see Fish. Runkle advanced the seven hundred and fifty dollars, took the deed to himself, and gave an obligation to Lichtenstein to convey the lots to him on the payment of seven hundred and fifty dollars within six and after three months from the date thereof, he (L.), in the meantime, to keep the property and pay a rent of sixty dollars per month until the purchase price was paid. After the deed was delivered to Runkle, Fish then offered him the three notes and the mortgage of Gaylord.

At first he appeared surprised at the offer, and was disposed to refuse having anything to do with them, and then accepted them. Subsequently Lichtenstein paid the seven hundred and fifty dollars to Runkle and took the deed. Gaylord tendered to Runkle before he deeded the lot to Lichtenstein, the

amount of the two hundred and forty dollars, note and interest, and demanded a deed for the property.    This was refused, and a suit was brought.    The referee finds that Lichtenstein had notice of the trust between Durgan and Gaylord, and that Runkle was not the real purchaser of the lot, but only advanced the money for Lichtenstein, and took his security on the lot.

The referee decrees that on the receipt of the two hundred and forty dollars and interest by Runkle, he should convey the lot to Gaylord.    This decree is sustained by the Court, and counsel for defendants ask for a rehearing.    The first proposition in petition is in general terms (no particular defect pointed out), that the complaint is defective.    The complaint is not a model of good pleading, but we think states facts sufficient to entitle the plaintiff to the relief sought, if sustained by the proof.    The next point is that even according to plaintiff's theory, Durgan was trustee, with power to sell, and if he sold under the power his failure in regard to the application of the funds could not invalidate the sale.

This is true if the sale was a fair one, and the purchaser had no complicity with the misapplication of the funds.

Another point made by the petitioner is, that if Lichtenstein knew the facts in relation to Durgan's holding the notes and mortgage against Gaylord, there is no evidence that he knew there was a promise or trust on the part of Durgan to send the proceeds of the sale to Gaylord's family.    That seems to be true; but it is a matter of no importance whether he knew anything about the trust or not.    If Durgan merely held the deed as security for the note (and once a mortgage always a mortgage, is a maxim of the law), then he must act fairly toward Gaylord.    He had no more right to commit a fraud on Gaylord than on his family.    Whether there was or was not a trust in favor of Gaylord's family, was immaterial so far as Lichtenstein was concerned.

The fact that the plaintiff did not swear the trustee, cannot have much weight in this case when we consider,

*First,* That the trustee was out of the Territory; and

*Second,* That if any fraud was committed, he was the main agent in the fraud.

The fact that Gaylord was asked to pay his debt before the sale was made, cannot deprive him of his property.

If, as the referee finds, Lichtenstein was the real purchaser, and Runkle only advanced the money for him and took security on the property, then Runkle's ignorance of the circumstances under which Durgan took the deed from Gaylord could not protect Lichtenstein. Runkle might be protected to the extent of securing his money advanced, but that is all. This money he had received from Lichtenstein; he could not claim it of Gaylord. Neither could Lichtenstein, unless he were an innocent purchaser. The fears of counsel that Runkle, an innocent party without notice, might, if this decree stands, be answerable over to Lichtenstein, are, we think, entirely without foundation. There was no encumbrance on this land, created by Runkle or any one claiming *under* him; but if there was an incumbrance, it was created by one who held the land *prior* to Runkle, and for such incumbrance Runkle is not liable under the 49th section of the Act concerning conveyances.

Having noticed the principal points made in the application for a rehearing, we will now give our views of the case in a more connected form.

The referee finds, and we think on sufficient evidence, that Runkle was not the real purchaser, but merely the mortgagee, in effect, of Lichtenstein. That being the case, and he having received his money of Lichtenstein before the trial and judgment, the case may be treated as if he were not in it. It is only necessary to investigate the rights of Lichtenstein and Gaylord. When Lichtenstein was negotiating with Fish for the lots, he knew Fish only wanted to raise the amount of those notes. Whether he had seen the mortgage or not, he must have known the land was held in some way as security for Gaylord's debts. All the circumstances pointed to this. Fish wanted to raise the amount of these notes, not to sell the land for the highest price he could get. Lichtenstein must have known that a lot renting for one hundred and fifty dollars per month was worth more than seven hundred and fifty dollars.

If he was in any doubt about the transaction, he knew Gaylord; paid his rent to him monthly, and could have inquired.

If Durgan held the land as security, it was his duty to sell it for the best price he could get; not to sacrifice it for the amount of his debt.

If the debt secured by the deed only amounted to two hundred and forty dollars and interest, say two hundred and eighty-five in all, two months' rent would have satisfied it. All he had to do was to require Litchtenstein to pay his rent to Fish instead of Gaylord for two months, and there was an end of the matter. If Gaylord was bound for the other two notes, and he could tack them to his mortgage, the same course for five months would have paid the whole. Lichtenstein having purchased under these circumstances is in this dilemma:

He must stand as the purchaser in good faith of the mortgagee's interest, or he must stand convicted of a fraudulent contrivance and combination with the mortgagee to attempt to deprive the mortgagor of his right of redemption.

Durgan's position was that of a mortgagee with power to sell. To say that a mortgagee with power to sell, who has an incumbrance on the estate of less than one-third its value—an incumbrance which five or six month's rent will discharge—has the right to sell the estate absolutely to the first man he meets who will pay the amount of incumbrance, without any attempt to get a larger price for it, would in our opinion, be equivalent to saying fraud and oppression shall be protected and encouraged.

The most favorable position for Lichtenstein to occupy, is that of a *bona fide* assignee of the mortgagee's estate.

The findings of the referee's report, perhaps, entitles him to that position. There is no finding of fraud.

If he was the *bona fide* assignee of the mortgaged estate, what then should have been the degree? Lichtenstein was renting the premises at one hundred and fifty dollars per month. He bought up the mortgagee's interest and stood as mortgagor in possession. As soon as the rents extinguished the debt of seven hundred and fifty dollars, he must surrender the premises to mortgagor or become liable for the rents. Lichtenstein held the premises from the 15th of February, when Fish made the deed, to November 5th, when report of referee was filed—say for eight and two-thirds months. The rent for this period was

9

one thousand three hundred dollars.    So after allowing the most liberal interest on the seven hundred and fifty dollars, and admitting Gaylord to be bound for the whole amount, it is evident there was a considerable balance in favor of Gaylord, for which he is entitled to a decree.

But instead of this the referee makes him pay two hundred and eighty-five dollars to get his lot.    This was evidently error, but it was error in favor of, and not against appellants.    There are certainly some errors and irregularities in the case, and per-haps a want of proper parties.    But there is nothing of which appellants have a right to complain.    The decree is more favorable to them than it should have been.    Rehearing denied.

Dissenting opinion by LEWIS, C. J.

I dissent from the opinion in this case, for the reasons that I do not think that the transaction between Fish, Runkle and Lichtenstein, constituted an assignment of the mortgage from Gaylord to Durgan, and also that there was no such fraud shown in the sale from Durgan to Lichtenstein as would authorize it to be set aside.