## WEBB ET AL. *v.* THE JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY ET AL.

[No. 20,112. Filed February 3, 1904. Rehearing denied May 12, 1904.]

PRINCIPAL AND SURETY. — *Married Women.* — *Mortgages.* — Section 6964 Burns 1901 prohibits a married woman from either personally obligating herself as surety for another, or from mortgaging or putting up her separate property as security for the debt or obligation of another person. *pp. 628, 629.*

SAME.—*Married Women.*—*Husband and Wife.*—*Tenants by Entireties.*—*Mortgages.*—Real estate held by husband and wife as tenants by entireties, in like manner as the separate property of the wife, falls within the protection or prohibition of §6964 Burns 1901, and can not be legally mortgaged by them to secure either the debts of the husband, or to secure the debt or debts of any person, other than the debts of the wife. *pp. 629, 630.*

HUSBAND AND WIFE.—*Tenants by Entireties.*—*Mortgages.*—A mortgage executed by husband and wife, in violation of the statute, upon lands held by them as tenants by entireties, is voidable not only as to the wife, but equally so as to the husband. *p. 630.*

PLEADING.—*Estoppel.*—Facts constituting estoppel must be specially pleaded. *p. 630.*

HUSBAND AND WIFE.—*Tenants by Entireties.*—*Conveyance to Husband Through Trustee.*—*Mortgages.*—A mortgage executed by a husband upon lands formerly held by himself and wife as tenants by entireties, but which had been conveyed to the husband through a trustee to enable the husband to obtain a loan, falls as fully within the prohibition of §6964 Burns 1901 as though the conveyance of the property to the husband had not been made. *pp. 630–632.*

SAME.—*Tenants by Entireties.*—*Conveyance to Husband.*—*Evasion of Law.*—*Mortgages.*—*Notice of Mortgagee.*—Where a husband in making an appli-

cation to an insurance company for a loan furnished the insurance company an abstract of title in which it was shown that the real estate offered to secure the loan was formerly held by the applicant and his wife as tenants by entireties but conveyed to the husband through a trustee a few days before the application for the loan was made for the nominal consideration of $1, the insurance company is chargeable with knowledge that the action of the parties in causing the premises to be conveyed to the husband was resorted to for the purpose of evading the law. *pp. 633–638.*

NOTICE.—*Applies to Subsequent Transactions.*—Notice to a party, actual or constructive, in a particular transaction, of a fact which exempts a defendant from liability in that transaction, is notice in all subsequent transactions of the same character between the same parties. *pp. 638, 639.*

SAME.—*Marriage Relations.*—Knowledge that a mortgagor was in 1896, at the time he acquired title to the real estate, a married man, did not charge the mortgagee with notice that the marriage relation continued to exist until 1900 when the mortgage was executed. *pp. 640, 641.*

PRINCIPAL AND SURETY.—*Husband and-Wife.*—*Mortgages.*—*Defense of Coverture.*—*Burden of Proof.*—The burden was on defendant in a suit to foreclose a mortgage to prove coverture of a mortgagor, the execution of the mortgage as surety, and knowledge of such facts by the mortgagee. *p. 641.*

From Marion Circuit Court (10,699); *H. C. Allen,* Judge.

Action by the John Hancock Mutual Life Insurance Company against Benjamin L. Webb, Sallie M. Webb, his wife, the State Bank of Indiana, and others. From a judgment for plaintiff, and for defendant State Bank of Indiana on its cross-complaint, Benjamin L. Webb and wife appeal. Appealed from the Appellate Court, under subdivision 3, §1337j Burns 1901. *Reversed as to plaintiff, and affirmed as to cross-complainant.*

*W. N. Harding, A. R. Hovey, C. S. Wiltsie* and *L. C. Walker,* for appellants.

*E. B. Raub, U. J. Hammond* and *L. J. Hackney,* for appellees.

JORDAN, J.—The John Hancock Mutual Life Insurance Company, one of the appellees in this appeal, instituted this action as plaintiff in the Marion Circuit Court against Benjamin L. Webb and Sallie M. Webb, his wife, and other defendants therein named. The complaint is in two para-

graphs. By the first the plaintiff seeks to recover a personal judgment against said Benjamin L. Webb on a principal promissory note executed by him on September 29, 1896, for the sum of $4,000, and also to recover on five coupon interest notes executed by him concurrently with the principal note. The plaintiff further seeks, under this paragraph, to foreclose a certain mortgage against all of the defendants to the action. This mortgage was executed by Webb and wife on certain real estate situated in the city of Indianapolis, Marion county, Indiana, to secure the payments of the notes set up and described in said paragraph. By the second paragraph of the complaint appellee seeks to recover a personal judgment against said Benjamin L. Webb on certain other promissory notes executed by him to said appellee company on the 11th day of January, 1898, and to foreclose a second mortgage of even date executed by him and his wife on the same real estate to secure the payments of the notes set up in the said paragraph. The State Bank of Indiana, a defendant in said action, and one of the appellees herein, filed its cross-complaint, seeking thereby to recover a personal judgment against Benjamin L. Webb and one William H. Schmidt upon a promissory note executed by them to the bank on the 6th day of October, 1900, for $928.22, and to foreclose a mortgage executed alone by Benjamin L. Webb on the same day upon the real estate in controversy to secure the payment of the note set out and described in this paragraph of the complaint. Appellant Benjamin L. Webb answered the complaint of the insurance company by a general denial. Sallie M. Webb, his wife, filed her separate answer to the first paragraph of the complaint alleging and showing therein, among other things, that on the 23d day of September, 1896, she was the wife of her codefendant Benjamin L. Webb, and had been for many years prior thereto; that on said day she and her said husband were the owners as tenants by entireties of the real estate described in the

first paragraph of the complaint, and had been such owners for several years prior to that date; that on said date she and her husband united in a deed of conveyance for the real estate in question to one John M. Wall, trustee, without any consideration whatever, with direction to him in the said conveyance that he should reconvey the real estate to her husband, which he did on that day; that no consideration of any kind passed between the said parties on account of the said conveyances; that there was no sale of said real estate, and that the conveyances were made for the purpose hereinafter stated; that said conveyances were placed on record on said day in the recorder's office of Marion county, Indiana, that being the county in which said real estate was situated; that before the aforesaid conveyances were made said Benjamin I. Webb alone had applied to the plaintiff for a loan of money from it to him, which was to be secured by a mortgage on said real estate; that the said conveyances were made to place the title in said Benjamin I. Webb in order that he might complete said loan, and mortgage said real estate to secure the note in suit, and for no other purpose.

It is further alleged and shown that the note sued on in the first paragraph of the complaint was executed to the plaintiff to secure a loan made personally to the husband for the amount of money named in the note, and that no part of said money was for the use or benefit of the said defendant Sallie M. Webb, nor was any part of it to be used for the benefit of the real estate mortgaged, or for any other real estate in which said defendant had any interest, and that no part of said money arising out of said loan to her said husband was ever used for her personal benefit, or for the betterment of any estate in which she had any interest, but that all of said money was borrowed for the personal use of her said husband alone, and was so used by him in his business, and for the payment of his personal debts.

It is further alleged that the plaintiff, at the time it received the application for said loan of money, and before the execution and acceptance of the mortgage to secure the same, knew the condition of the title to said realty, that the same had long been held by this defendant and her said husband as tenants by entireties, and that the same was, without any consideration, transferred through a trustee to said Benjamin L. Webb but a few days before said mortgage was executed; that the plaintiff knew "that this defendant was a married woman, and, on proper inquiry might have known, and did know, that said debts so secured by said mortgage were alone the debts of her husband, and that no part was for her benefit or for the benefit of any of her property, and that said device was adopted for the purpose of evading the statute of the State which prevents a married woman from becoming the surety of her husband or any other person." She further alleged that she had made no statements in writing or otherwise to anyone as to said loan. The paragraph closes with the averment that the mortgage in suit ought not to be foreclosed on said real estate, etc.

The second paragraph of the answer which was addressed to the second paragraph of the complaint set out and disclosed substantially the same facts as did the first paragraph, so far as they were material to the mortgage therein sought to be foreclosed.

To this separate answer of the wife, Sallie M. Webb, appellee insurance company replied by a general denial. Appellant Benjamin L. Webb answered the cross-complaint of the State Bank of Indiana by a general denial. His wife also filed her separate answer to this cross-complaint, whereby she alleged facts in regard to the title of the real estate mortgaged, and her being a surety for her husband, substantially as alleged in her answer to the complaint of the insurance company. To this answer of the wife the cross-complainant replied by a general denial. Upon the is-

sues joined between the parties by the pleadings herein mentioned, the court upon request at the trial made a special finding of facts, and stated its conclusions of law thereon adversely to appellants, upon the question of the foreclosure of the mortgages herein in controversy.

The special finding of facts made by the court and the conclusions of law of which the appellants complain are as follows:

(1) That on the 6th day of January, A. D. 1894, and prior thereto, said Benjamin L. Webb and Sallie M. Webb were husband and wife, and have ever since been, and are still, such; that on the 6th day of January, 1894, the defendant Benjamin L. Webb purchased the real estate described in the complaint of one William N. Harding, and caused the same to be conveyed to said Benjamin L. Webb and Sallie M. Webb, as husband and wife; that the full consideration therefor was paid by Benjamin L. Webb, who at that time was not indebted, and was worth over $50,000 in money and property. And they so held said property until the 23d day of September, 1896.

(2) That on the 23d day of September, A. D. 1896, the said Webb, with his wife, joined in a deed conveying said real estate, to wit, lot No. 31 in William H. Morrison's first addition to the city of Indianapolis, Marion county, Indiana, to John M. Wall, as trustee, for the use and benefit of said Benjamin L. Webb. The consideration for conveyance was stated therein to be $1, but no sum was in fact paid in money or property. It was expressly provided in said conveyance that said real estate should be reconveyed by said John M. Wall to said Benjamin L. Webb upon demand by said Webb for such conveyance; that said Wall immediately on said date executed a deed of conveyance of said real estate to said Webb in pursuance of the provisions of said first-named deed, the consideration therein stated being $1, but in fact no sum was paid in money or property; that both of said deeds were entered for record in the

recorder's office of Marion county on said date; that said conveyances were made and procured by the said Webb and wife to enable the former to make a loan on said real estate thereafter as he might find opportunity, and to secure the same by mortgage on said property. And said Webb and wife agreed between themselves that, after executing said mortgage or mortgages as said Webb might desire, the said property should again be conveyed to said Benjamin L. Webb and wife, as it was formerly held.

(3) That on the 26th day of September, A. D. 1896, the said Webb made a written application to the plaintiff for a loan of $4,000, to be secured by mortgage on said real estate, and said application was signed "Benjamin L. Webb, applicant and owner," and expressly provided that the costs of examining the title and preparing the papers by the counsel of the plaintiff were to be paid by the applicant in case of acceptance or rejection of loan, and to be paid at the time of closing the loan; that the commission was paid by said Webb, and was divided between Appel and Hammond.

(4) That the receipt of said written application was communicated by said Hammond to the Plaintiff, who accepted the same if the title to said real estate should be approved by said Hammond, as its agent and attorney.

(5) That afterwards on the 29th day of September, 1896, the defendant Webb, by his agent, presented to the agent of the plaintiff an abstract showing the chain of title to said property up to and including the 28th day of September, 1896; that said abstract of title showed on its face the conveyance for said property from Harding and wife to said Webb and wife, as husband and wife, and also showed the record of conveyance of Webb and wife to John M. Wall, trustee, executed on the 23d day of September, 1896, and also the conveyance of Wall, trustee, on the same day, to Benjamin L. Webb; that the plaintiff had no knowledge of the purpose of the making of the conveyance

to said trustee, or the making of the deed by said trustee to said Benjamin L. Webb, except such as was disclosed by the record aforesaid and said abstract of title; and neither the plaintiff, nor any agent of the plaintiff, ever made any inquiry of Webb, or his wife, or of Appel, as agent, or of any other agent or person, as to the purpose of said conveyance to Wall, trustee, or the conveyance by said Wall to said Webb; the first of which conveyances contained this recital, to wit: "This deed is made upon the express condition that said trustee shall convey such described real estate to said Benjamin L. Webb upon demand being made by him for such conveyance;" which recital was shown on the abstract of title furnished to and examined by said Upton J. Hammond when plaintiff made its loans.

(6)    That the plaintiff, through said Upton J. Hammond, accepted said application for a loan, examined and approved said title, and on the 30th day of September, 1896, the defendant Benjamin L. Webb, and Sallie M. Webb, his wife, executed to the plaintiff a mortgage on said property to secure notes executed by said Webb of date of September 29, 1896, and delivered to the plaintiff on said 30th day of September, 1896, one principal note for $4,000, due in five years from date with interest at eight per cent. per annum after maturity; also ten interest coupon notes, each for the sum of $120. Certain parts of the special finding in regard to the maturity of the notes and stipulations therein are omitted as immaterial to the question involved.

(7)    That the sole purpose of making said loan was to raise money to put into a certain manufacturing business in which said Webb was interested, and for the purpose of raising money with which to pay his individual debts; that said Sallie M. Webb had no interest whatever in said business, and was not liable for any of the debts of said Benjamin L. Webb, and that no inquiry was ever made by anyone on behalf of the plaintiff either of said Webb or his

wife, or anyone representing them, or either of them—as to what was to be done with the proceeds of the loan; that the plaintiff paid all of the proceeds of said loan to Benjamin L. Webb through draft payable to his order, and that no part of the proceeds of said loan was received by the defendant Sallie M. Webb, and that no part of it went to pay any debt due from her, and no part of the same was used upon, or for the betterment of, any of her estate, and that she received no benefit from any of the proceeds of said loan, nor any of her estate, personal or real, but that the entire proceeds of said loan were used by said Benjamin L. Webb alone in the payment of his individual debts, and by the payment of the same by him into his individual business.

(8)   That on the 8th day of January, 1898, said Webb made his written application to the plaintiff for a second loan in the sum of $2,500, in addition to said sum of $4,000, and on the 11th day of January, 1898, presented to the plaintiff his said  abstract, certifying the chain of title of said real estate to the 10th day of January, 1898, and showing that no conveyances or other changes in the title to said property had been placed of record since the recording of the deed to John M. Wall, trustee, and by him to said Webb; that said application contained no statement as to who was the owner of the real estate; that said application was accepted, and Webb executed his principal note to the plaintiff for the sum of $2,500, bearing the date of January 11, 1898, and payable three years after date, with interest at the rate of eight per cent. per annum after maturity, without relief from valuation or appraisement laws, and with five per cent. attorney's fees.   At the same time Webb executed his six coupon interest notes, each for the sum of $75, bearing interest at the rate of eight per cent. per annum after maturity, with five per cent. attorney's fees, and waiving relief from valuation or appraisement laws, etc.   (Here follows a description of the notes.)   That

on said 11th day of January, 1898, said Webb and his wife executed their mortgage on the real estate hereinbefore mentioned to secure said last-named principal note and coupon interest notes; that said mortgage contained the stipulation that if any part of the debt secured by the same, or any interest note, should not be paid when due, the whole debt thereby secured, together with five per cent. attorney's fees thereon, should, at the option of the mortgagee, be deemed due and collectible, and that said mortgage might be foreclosed accordingly; that said last-named mortgage was duly entered for record on the 12th day of January, 1898; that the loan was made for the sole purpose of raising money with which to pay the debts and carry on the individual business of said Webb; that the proceeds of said loan were paid to the said Webb alone, directly to his order, and that no part of said proceeds was received by defendant Sallie M. Webb, or was used for the payment of any debt due from her, or for the betterment of any property or estate in which she had an individual interest, and that in the making of said last-mentioned loan no inquiry was ever made by the plaintiff, or anyone representing it, of the said defendant Webb or his wife, or of any agent of either of them, as to what was to be done with the proceeds of said loan, or as to the purpose of the making of the aforesaid deeds, or either of them; and that neither Webb nor his wife, nor anyone representing them, or either of them, made any representation or statement to anyone at the time of making said loans, or either of them, or at any time, as to what was to be done with the proceeds arising from said loans, or either of them.

(9)  That at the time of and prior to the execution of the last-named notes and mortgage, as well as at the time of the execution of the said notes and mortgage to cover the loan of said $4,000, plaintiff had no actual knowledge that said deeds of conveyance to and from said Wall, trustee,

were to enable said Webb to secure a loan to himself, nor that it had been agreed between Webb and his wife that the said property should be reconveyed to said Webb and wife, nor did it know anything of said two deeds in the chain of title to said property, except as the same were shown by the abstract of title; that the plaintiff made the two loans aggregating $6,500, to the defendant Webb, and accepted the several obligations mentioned herein, relying in good faith upon the ownership in his own right by Webb of said real estate as shown by said abstract. The defendant Sallie M. Webb, at the time of the execution of each and all of the several obligations above described, knew that the plaintiff was lending to her husband the sums of money for which said principal notes were executed by him, and she also knew that the mortgages of said real estate were being executed to secure the said several sums. (Here follows the finding of the amount or amounts due upon the notes of appellee insurance company.)

(10)    That on the 8th day of November, 1900, said Webb and wife executed a deed of said real estate to John M. Wall, trustee, who on the same day, in execution of the trust under said deed, conveyed the said real estate to Benjamin L. Webb and Sallie M. Webb, husband and wife, in pursuance of the agreement between Webb and wife made September 23, 1896.

The 11th, 12th, 13th, 14th, 16th, and 17th findings embrace facts relating to subsequent lien holders whose rights are not involved in the question presented in this appeal; hence these findings are omitted.

In regard to the special finding upon the issues between appellants and the State Bank of Indiana, we omit all that part thereof relating to the title of the real estate as held by appellants, and the conveyances thereof in question for the reason that it is substantially the same as hereinbefore set out. After omitting this part the finding proceeds as follows:

(15)    That on the 6th day of October, 1900, the defendant Webb, being threatened with suit upon a note held by cross-complainant the State Bank of Indiana, against him, executed and delivered to said cross-complainant a renewal of said former note—being the note sued upon in, this cause by said cross-complainant—at the same time, and as a part of the same transaction, and for the purpose of securing the payment of said new note and of avoiding suit, said Webb executed and delivered to the cross-complainant the mortgage in this cause sought to be foreclosed by said bank, covering and describing said real estate; that said note, dated October 6, 1900, so secured and sued upon in this cause, was for the sum of $928.22, due forty days after date, bearing interest at the rate of eight per cent. per annum after date, provided for attorney's fees, and was without relief from valuation or appraisement laws; that said mortgage was duly acknowledged before a notary public, and was received for record in the office of the recorder of Marion county, Indiana, on the 8th day of November, 1900, and was recorded in Mortgage Record ——; that the total amount due and owing on said note to said bank, of principal, interest, and attorney's fees, is $1,050.83; that William H. Schmidt is a surety on said note; that the money so loaned to said Webb by said bank, and for which said note was given, was used by him in payment of his individual debts; that the defendant Sallie M. Webb received no part of said sum, and none of said money was used for the benefit of her estate in any manner; that said Benjamin L. Webb alone executed said mortgage on said real estate described in said cross-complaint, to secure the payment of said note of October 6, 1900.

The court, upon its special finding of facts, stated, among others, the following conclusions of law:    (2) That said plaintiff's first mortgage * * * is a valid and subsisting lien upon said property; (3) that said mortgage is

senior and superior to each and all claims of the several defendants and cross-complainants, and should be foreclosed as to each and all of them; (4) that said plaintiff's second mortgage is a valid and subsisting lien upon said property; (5) that said mortgage is senior and superior to all claims of the several defendants and cross-complainants herein, and should be foreclosed against all of them; (7) that the State Bank of Indiana should recover the amount found due against Benjamin L. Webb, and that its mortgage should be foreclosed against all parties to the suit, except Sallie M. Webb. The other conclusions of law declare the rights of certain junior lien holders. These latter conclusions, however, are not before us in this appeal for review.

On the facts found, the court rendered a judgment against Benjamin L. Webb on the notes in suit in favor of the John Hancock Mutual Life Insurance Company for $7,954.45. A judgment was also rendered against him and William H. Schmidt, his surety, in favor of the State Bank of Indiana for the sum of $1,050.83. The court ordered and decreed that both of the mortgages of the insurance company, and also the mortgage of the State Bank of Indiana, be foreclosed against appellants and other defendants.

Benjamin L. Webb and Sallie M., his wife, alone appeal, and claim a reversal of the judgment of the Appellate Court, upon the ground that it erred in affirming the judgment of the Marion Circuit Court, and also a reversal of the judgment of the latter court upon the grounds that it erred in its conclusions of law upon the special finding whereby it affirmed the validity of each of the mortgages in suit.

Counsel for appellants earnestly contend (1) that the real estate held by Benjamin L. Webb and his wife as tenants by entireties was under the protection or prohibition of §6964 Burns 1901, §5119 Horner 1901, which section

declares that "a married woman shall not enter into any contract of suretyship, whether as indorser, guarantor, or in any other manner, and such contract, as to her, shall be void;" (2) that the sole and express purpose of appellants, as disclosed by the facts, in executing a conveyance of the property in question to a trustee and through him to the husband, was but a contrivance or a scheme to place the title thereto in the husband, in order that he might encumber the same by mortgage as a security for the money borrowed by him from appellee for his own benefit, and therefore was a circumvention or evasion of the statute. The contention is further advanced by appellants that appellee, under the facts, is at least chargeable with constructive notice of the attempt or scheme to evade the statute on the part of appellants.

Counsel for appellee contend that inasmuch as this court in the appeal of *Leach* v. *Rains,* 149 Ind. 152, affirmed the right of a married woman to convey her separate real estate, through the intervention of a trustee, to her husband as a gift or for a valuable consideration, subject to be avoided for fraud or undue influence on the part of the husband, therefore, the wife having the legal right to do so, the conveyance in question in this case rebuts any inference of an intent on the part of appellants to evade the statute in controversy. The further insistence is that even though the conveyance on the part of Webb and his wife was made for the purpose or in order to circumvent or evade the statute, the facts disclosed by the special finding do not show that appellee, at the time it loaned the money to the husband, and accepted the mortgages as security therefor, had notice of that fact. It is settled by repeated decisions of this court that the statute in dispute prohibits a married woman from either personally obligating herself as a surety for another, or from mortgaging or putting up her separate property as security for the debt or obligation of another person. It is equally well affirmed by our decisions that real estate held

by husband and wife as tenants by entireties, in like manner as the separate property of the wife, falls within the protection or prohibition of the statute, and cannot be legally mortgaged by them, to secure either the debts of the husband, or to secure the debt or debts of any person, other than the debts of the wife. A mortgage executed by a husband and wife, in violation of the statute, upon lands held by them as tenants by entireties, is voidable not only as to the wife, but equally so as to the husband. In support of the foregoing propositions see, *McCormick, etc., Mach. Co.* v. *Scovell,* 111 Ind. 551, and cases there cited. *Abicht* v. *Searls,* 154 Ind. 594, and cases cited.

It will be observed that appellee replied only by the general denial to the separate answer of Mrs. Webb whereby she set up her suretyship; consequently under the pleadings it is not in a position to claim that she is bound by any estoppel *in pais.* Facts constituting estoppel, in order to be available in a case, must, under our civil code, be especially pleaded. *Wood* v. *Ostram,* 29 Ind. 177; *Bowles* v. *Trapp,* 139 Ind. 55; *Board, etc.,* v. *O'Connor,* 137 Ind. 622; *Field* v. *Noblett,* 154 Ind. 357; *Fleener* v. *Claman,* 112 Ind. 288; *Peters* v. *Griffee,* 108 Ind. 121; *Center School Tp.* v. *State, ex rel.,* 150 Ind. 168; *International, etc., Assn.* v *Watson,* 158 Ind. 508; 8 Ency. Pl. & Pr., 7.

In considering the question of circumvention or evasion of the statute in controversy in the appeal of *Government, etc., Inst.* v. *Denny,* 154 Ind. 261, we said: "It is an ancient legal maxim that when anything is prohibited directly, it can not be done indirectly, or, in other words, a prohibition which the law imposes can not be evaded by any circuitous contrivance. Barton's Legal Maxims, 77; Broom's Legal Maxims, 488. Hence, in obedience to this rule, a married woman can not evade the positive prohibition of the statute in question by vesting the title to her real estate in her husband, or some other person, for the sole purpose, as alleged in the answer of appellee, of permitting it to be

mortgaged to secure a debt other than her own, where the party accepting such security knows that the contrivance was resorted to for the purpose of evading the law."

Had appellants mortgaged the premises in question directly to appellee to secure a loan of money to the husband, for his use and benefit, before the conveyances which were executed on September 23, 1896, under the circumstances the validity of such mortgage could not be controverted. In such a case the wife would not be concluded from avoiding the mortgage unless it could be shown by sufficient facts that she was estopped from so doing. As Mrs. Webb in this case, under the statute, was directly prohibited from mortgaging the real estate in controversy to secure the debts of her husband, therefore, effectually to carry out the object of the law, it must, as the authorities affirm, be so construed as to defeat all contrivances or shifts by her and her husband to evade it.

In a leading work on the interpretation of statutes, the author, in considering the construction which should be placed upon the statutes in order to prevent their evasion, deals with the question as follows: "It is the duty of the judge to make such construction as shall suppress all evasions for the continuance of the mischief. * * * When the acts of the parties are adopted for the purpose of effecting a thing which is prohibited, and the thing prohibited is in consequence effected, the parties have done that which they have purposely caused, though they may have done it indirectly. When the thing done is substantially that which is prohibited, it falls within the act, simply because, according to the true construction of the statute, it is the thing thereby prohibited. Whenever courts see such attempts at concealment, 'they brush away the cobweb varnish,' and show the transaction in its true light. They see things as ordinary men do, and so see through them. Whatever might be the form or color of the transaction, the law looks to the substance of it. * * * In all such cases, it is,

in truth, rather the particular transaction than the statute which is the subject of construction; and if it is found to be in substance within the statute, it is not suffered to escape from the operation of the law by means of the disguise under which its real character is masked." Maxwell, Interp. of Stat. (3d ed.), 157. See, also, Endlich, Interp. of Stat., §138. In *Floyer v. Edwards,* 1 Cowp. 112, it is well affirmed by Lord Mansfield, concerning the act prohibiting usury, that if the contract in truth was an usurious loan, "the wit of man cannot find a shift to take it out of the statute."

The facts in the case at bar fully disclose that the conveyances made by appellants to the trustee, and by him to Benjamin L. Webb, the husband, were made to enable the latter to obtain a loan of money as he might find opportunity to do so, and to secure the loan by a mortgage on the property. It appears that after securing such loan it was provided by an agreement between him and his wife that he should cause the premises to be reconveyed to them to be held as they formerly had been. After placing thereon all of the mortgage liens here involved, he appears to have complied with this agreement, and the realty was reconveyed to him and his wife, through the intervention of a trustee. That the facts as found by the court clearly reveal a shift, device, or contrivance on the part of appellants to avoid, in an indirect or circuitous manner, that which the statute expressly prohibited, is certainly not a debatable question. When such attempts to evade a positive law are shown, it is the duty of a court, as the authorities affirm, to "brush away the cobweb varnish, and show the transaction in its true light." Enforcing this well-established rule, and it follows, under the circumstances in this case, that the act of appellants in mortgaging the real estate in dispute must be held to fall as fully within the prohibition of the statute as though the conveyance of the property to the husband had not been made.

The next inquiry is, can appellee insurance company, at the time it accepted the first mortgage, be chargeable with notice or knowledge that the shift or contrivance of appellants in causing the premises to be conveyed to the husband was resorted to for the purpose of evading the law? The court found that appellee had no knowledge of the purpose of making the conveyances of date September 23, 1896, to the trustee, and by the latter to the husband, "except such as was disclosed by the record aforesaid and said abstract of title."

In considering the question as to whether constructive knowledge of the evasion in question can be imputed to appellee, we may properly call attention to some of the facts and circumstances, among others, of which it was apprised by an examination of the record and abstract of title. It is shown to have had knowledge at the time the loan was made that appellants were husband and wife, and that in 1894 the real estate in question had been conveyed to them as husband and wife, and that they continued so to hold it until September 23, 1896, on which date, by the deeds in controversy, it was conveyed to the husband for the nominal consideration of $1 as expressed in both deeds. It also knew, or must be presumed to have known, that the condition upon which the land had been conveyed to the trustee was that he should convey it to the husband on demand. It was also apprised of the further fact that the husband was seemingly in haste to secure a loan on the property, for it appears that within three days after the conveyances thereof to him he made application for the loan in controversy. It seems that the company at once agreed to loan him the money, if his title to the property should be approved by Mr. Hammond, its agent and attorney. The abstract was examined and approved by the latter, and on September 30, 1896, the loan was made to the husband for $4,000, and the mortgage in suit was executed and accepted by it as a security for said loan,

Notwithstanding all of the means of knowledge afforded to appellee, it made no further inquiry whatever of appellants, or either of them, or of any other person, in regard to the object or purpose of the conveyances made on September 23, 1896. Under the circumstances appellee had no sufficient reason to rest content in the mere belief that the wife, in good faith, had sold the property to the husband for the mere pittance of $1, upon which it accepted a mortgage as security for $4,000 and over.

It would appear, when all of the facts and circumstances of which appellee had knowledge are considered, that its neglect to make further inquiry can only be explained upon the theory that it desired to remain ignorant. It was not at liberty to close its eyes and make no further inquiry or investigation, and then, as it does in this action, attempt to shield itself upon the plea that it was ignorant of the purpose of appellants to evade the law by executing the conveyances in question.

We do not mean to affirm that appellee can be prejudiced by any secret agreement between appellants of which it had no knowledge. The proposition with which we are called upon to deal is not in regard to any secret agreement between appellants of which appellee had no notice, but the question is, what knowledge under all of the circumstances ought to be imputed to it in respect to the particular point here involved.

In *Ward* v. *Berkshire Life Ins. Co.*, 108 Ind. 301, this court, in considering a mortgage executed by a married woman on her separate property, said, by Elliott, J.: "The question is, not what facts were known to the mortgagors, but what facts did the appellee have knowledge of, or ought it under the circumstances to be charged with having knowledge of? It is true that the appellee, having notice of Mrs. Ward's coverture, was bound to inquire whether she had capacity to make the contract; but when reasonable care and diligence are exercised, the party con-

tracting with a married woman may rely upon her representations."

In *Cupp* v. *Campbell*, 103 Ind. 213, this court affirmed that "one contracting an encumbrance on the estate of a married woman can not, however, deal with her at arm's length, knowing that she is married, and that by law she is prohibited from contracting for the benefit of another; and, knowing that she is about to encumber her separate estate in his favor, he is bound to inquire concerning the consideration, and ascertain, if he may, by reasonable inquiry from her, whether it is for her benefit or for the benefit of another, and, unless misled by the conduct or representations of the wife, he will be held to have acquired a knowledge of the facts which prudent inquiry would have disclosed.   *   *   *   Considering the importunities to which they are liable, the statute should be construed so as to answer the purpose for which it was enacted."

In *Cummings* v. *Martin*, 128 Ind. 20, it is said: "It is only where the lender is a party to, or is chargeable with knowledge of, the attempted evasion of the statute that the contract is invalidated."

The principle is elementary, and one well supported by authorities, that where one has knowledge of facts sufficient to excite the attention of a person of ordinary prudence and put him upon further inquiry, he is required to make such inquiry in good faith and with diligence, and, in the absence of so doing, he will be chargeable with the knowledge of the particular point or fact which such inquiry would have revealed or imparted. *Kuhns* v. *Gates*, 92 Ind. 66; *Smith* v. *Schweigerer*, 129 Ind. 363; *Perrine* v. *Barnard*, 142 Ind. 448; *Hawes* v. *Chaille*, 129 Ind. 435; *Filmore* v. *Reithman*, 6 Colo. 120; Wade, Notice, §§10, 11.

In fact, it may be asserted that the rule as to the knowledge which will be imputed to the grantee in a case of fraudulent conveyance, and likewise the rule recognized in

respect to the knowledge which a purchaser of real estate is held as a matter of law to have acquired from the conditions, recitals, etc., in deeds and other instruments of record which constitute his chain of title, are applicable to the question of knowledge as here involved.

The rule is well settled that in an action to set aside a fraudulent conveyance it is not necessary that the grantee of the fraudulent grantor shall have actual knowledge of the intent of the latter to hinder or defraud creditors. A leading author deals with the question of knowledge in such cases as follows: "A knowledge of facts sufficient to excite the suspicions of a prudent man and to put him on the inquiry, or to lead a person of ordinary perception to infer fraud, or the means of knowing by the use of ordinary diligence, amounts to notice and is equivalent to actual knowledge in contemplation of law. The nature and circumstances of the transaction may sometimes be such as must apprise the grantee of its character and object." Bump, Fraud. Conv. (4th ed.), §184.

In the case of a purchaser of real estate, he is required to take notice of conditions and recitals in deeds of record in his chain of title which affect such title. Wade, Notice, §§307, 308, 313. In the latter section the author says: "The reason alleged for the rule is that the purchaser is entitled to see all the muniments of title, and therefore must be presumed to have seen them, and to have taken notice of all other recitals which in any way affect his purchase, as the omission on his part to take such precaution would amount to gross negligence."

In Webb, Record of Titles, §176, the author says: "The record is notice of everything deducible from its contents as matter of law. * * * The record will charge constructive notice of fraud in the execution of the deed where there is matter on the face of the instrument indicating fraud, but not otherwise." In §178 of the same work, it is asserted that "as to matters of fact recited or alluded to

in the record, and as to other instruments referred to therein, it may be stated as a general rule that if there is sufficient contained in the record to reasonably induce an inquiry in the mind of an intelligent person, it will charge notice of the facts so contained, and of all facts which an inquiry suggested by such information diligently prosecuted would have disclosed. In many instances the constructive notice imparted by the record is in the same transaction blended with that arising from recitals in other instruments in the same chain of title, and also with that growing out of the duty of inquiry suggested by some matter of fact entirely outside of the record." In §179 the same author says: "Recitals of an unusual character will ordinarily excite attention and charge notice by imposing the duty of inquiry. Thus the recital of an inadequate consideration, especially if it be grossly disproportionate to the real value of the property, is often regarded as a cogent circumstance so loudly informing the purchaser of fraud that he will not be permitted to shelter himself behind the want of actual knowledge." See, also, 23 Am. & Eng. Ency. Law (2d ed.), 513; *Hume* v. *Franzen,* 73 Iowa 25, 34 N. W. 490; *Hoppin* v. *Doty,* 25 Wis. 573; *Worthy* v. *Caddell,* 76 N. C. 82, 86; *Eck* v. *Hatcher,* 58 Mo. 235; *Knapp* v. *Bailey,* 79 Me. 195, 9 Atl. 122, 1 Am. St. 295.

The real estate held by appellants as tenants by entireties was so far within the protection of the law as, generally speaking, not to be subject to the debts or obligations of either the wife or husband. Neither could convey or mortgage it without the other joined, and, in case of mortgage, only to secure the obligations of the wife. As appellee appears to have known that appellants were husband and wife, and that the property was held by them as such, it was bound to know of the protection afforded it under our laws. Under these circumstances, it would seem that the natural or reasonable inquiry suggested

thereby would be, why should the wife be moved to convey the property to the husband in consideration of the mere sum of $1, thereby subjecting it to all obligations or debts which might legally exist against him? Her action on the face of the transaction, certainly so far as the matter of her property rights or interests were concerned, could not be said to conduce to her betterment. The very character and circumstances of the transaction leading up to the execution of the mortgage are apparently so singular, or beyond the ordinary, as to have excited the attention of an ordinarily prudent person, and put him, as the authorities assert, "upon further inquiry" in regard to the purpose or motive of conveying the real estate to the husband. Had an inquiry been made in good faith and with diligence, it may be assumed that appellee would have ascertained and been fully apprised of the purpose or motive of appellants in making the conveyances in controversy on the 23d day of September, 1896. As appellee had the means of knowledge in regard to this particular fact or point, in contemplation of law it must be held as chargeable with knowledge of such fact. *Ray* v. *Yarnell*, 118 Ind. 112; *Singer, Baer & Co.* v. *Jacobs*, 3 McCrary (U. S.) 638; *Runkle* v. *Gaylord*, 1 Nev. 123, and other authorities hereinbefore cited.

As the special finding discloses that appellee had the same means of knowledge in regard to the purpose or motive of appellants to evade the statute at the time it accepted the second mortgage on the premises to secure an additional loan from it to the husband as it had when it made the first loan to him, it is in no better attitude to shield itself upon the ground of want of notice than it was in regard to the first mortgage. Between the dates of the two mortgages it appears that the title to the real estate remained unchanged, no other conveyances thereof having been made. As appellee is shown to have had knowledge of the fact of the evasion in question at the time it made the first loan to

the husband, as the court finds, and was afforded the same means of knowledge at the time it made the second loan to him and accepted a mortgage upon the identical real estate, it must be held as chargeable with knowledge at the time of the purpose or motive of appellants in making the conveyances in controversy.

It is affirmed by the authorities that where a person already has notice, either actual or constructive, of a fact material to a new transaction, "the new dealing must be judged and the rights of the parties must be determined on the assumption that the fact of which he had prior notice, actual or constructive, was then known to him. In other words, notice to a party, actual or constructive, in a particular transaction, of a fact which exempts a defendant from liability in that transaction, is notice in all subsequent transactions of the same character between the same parties." *Cox* v. *Pearce,* 112 N. Y. 637, 20 N. E. 566, 3 L. R. A. 563.

The facts in the appeal of *Long* v. *Crosson,* 119 Ind. 3, 4 L. R. A. 783, cited by appellees, are easily distinguishable from those in the case at bar. In that case the deed of record whereby the real estate, which was a lot in the town of Fowler, had been conveyed to the husband, disclosed on its face a consideration of $1,500. On the face of the deed, aside from any other notice that might have been imputed to the mortgagee, that amount might have been presumed to have been a full consideration for the lot. The title to the premises therein had stood in the name of the husband for six months prior to the time he secured the loan thereon. It is stated in that case that the lender or mortgagee had no knowledge that the title of the wife to the realty had been transferred to the husband for the purpose of evading the statute.

Under the circumstances and facts in this case we conclude that at the time appellee insurance company accepted

each of the mortgages in suit, it must be held as chargeable at least with constructive knowledge of appellants' purpose or object to evade the statute.

It appears that appellee the State Bank of Indiana became a cross-complainant in this suit for the purpose of foreclosing its mortgage. So far as the question between it and appellants herein is concerned, it must be treated as though it had as plaintiff in an independent and separate action sought to foreclose that instrument.

The first, second, and fifteenth paragraphs of the special finding are the only ones which can be said to affect the bank. Upon these findings the seventh conclusion of law is based. Counsel for the bank insist that this conclusion, under the facts, is justified. Some of the facts, among others, which Mrs. Webb, in her separate answer to the bank's cross-complaint, alleged, substantially, are: (1) That the records of the recorder's office showed the conveyances of September 23, 1896, by which the title to the real estate in question had been transferred to Benjamin L. Webb; (2) that the bank on October 6, 1900, when it accepted the mortgage from him as security for the new note, knew of the purpose for which the title thereto had been placed in him, viz., in order to enable him to mortgage the premises to secure his own indebtedness; (3) she further charged that she, under the mortgage, was a surety, which fact was well known by the bank at the time it accepted said instrument. It will be noted that the special finding discloses that Webb alone executed the mortgage to the bank, his wife not joining therein, and that in the matter of said mortgage the bank dealt entirely with him, in whose name the title, as shown by the records, then stood, and had so continued to stand for a period of over four years. It will be further observed that there is an entire absence of any facts in the special finding, so far as it applies to the bank, which even tend to show that, at the time the mortgage was accepted from Webb, it either

knew or ought to have known that he was a married man. It is true that it may be said that the deed made September 23, 1896, by which he acquired the title to the premises, disclosed on its face that he was at that time the husband of Sallie M. Webb; but certainly when the period of time which had elapsed between September 23, 1896, and October 6, 1900, is considered, the bank, under such circumstances alone, can not be held as chargeable with knowledge that such married relation continued to exist. In the absence of anything to the contrary, the bank from the mere fact that it may be said to have had notice from the record that Benjamin L. Webb was a married man on September 23, 1896, was not bound to assume that such conjugal relations still continued to exist on October 6, 1900. See, *Craig* v. *Bennett,* 146 Ind. 574; *Crowder* v. *Riggs,* 153 Ind. 158. Her suretyship, as alleged, and her coverture at the time the bank accepted the mortgage, and the further fact that the bank had knowledge of these facts, were material, and the burden was upon her to prove them in order to sustain her alleged defense. As the special finding is silent in regard to any knowledge which the bank had in respect to the fact of her coverture at the time of the transaction with Mr. Webb, it must be treated, under the rule so repeatedly affirmed by this court, as an express finding of that fact against her. The office of a special finding is to find facts, and no omission of a fact therein can be supplied by intendment. *Bell* v. *Corbin,* 136 Ind. 269; *Cleveland, etc., R. Co.* v. *Miller,* 149 Ind. 490; *Metropolitan Life Ins. Co.* v. *Bowser,* 20 Ind. App. 557; Elliott, App. Proc., §757. As, under the circumstances, we are compelled to presume that Mrs. Webb failed to establish the fact in regard to knowledge on the part of the bank, it must follow, for this reason alone, if for no other, that her exceptions to the court's seventh conclusion of law were properly overruled.

Vol. 162—41.

We conclude that the Appellate Court erred in affirming in whole the judgment of the Marion Circuit Court, and that the latter court, under the facts, erred in sustaining the validity of each of the mortgages of appellee insurance company, and in enforcing foreclosures thereof.

The judgment of the Appellate Court is reversed in part, and likewise that of the Marion Circuit Court, and the cause is remanded to the latter court, with instructions to restate its conclusions of law consistent with this opinion, and render judgment accordingly.

Gillett, J., concurs in the result.