## ISAACS ET AL. *v.* WILEY ET AL.

[No. 12,445.   Filed December 22, 1926.]

1. REFORMATION OF INSTRUMENTS.—*Laches on part of mortgagees which would preclude reformation of mortgage not shown.*—Laches of a mortgagee in seeking the reformation of his mortgage for a mistake therein whereby the mortgage was made to cover only a one-fourth interest in the property intended to be mortgaged instead of the whole property, was not shown where all interested parties, as late as a month before suit was brought, acted on the theory that the mortgage covered the whole property.   p. 504.

2. REFORMATION OF INSTRUMENTS.—*Mortgage can be reformed against subsequent purchaser who has knowledge of circumstances sufficient to put him on inquiry.*—A mortgage can be reformed, because of mistake, against a subsequent purchaser of the mortgaged land not only when he has actual notice of the mistake but when he has knowledge of circumstances that would put him on inquiry (*Easter* v. *Severin,* 64 Ind. 375, distinguished and criticised).   p. 504.

3. REFORMATION OF INSTRUMENTS.—Evidence *held* sufficient to warrant an inference that, at the time of the execution of a mortgage, covering only a one-fourth interest in the land mortgaged, the parties thereto believed it described the whole property and that the mistake was mutual.   p. 505.

4. REFORMATION OF INSTRUMENTS.—*Inference that parties believed that instrument sought to be reformed for mistake therein was correct may be drawn from their conduct.*—Although the existence of a mistake in a written instrument sought to be reformed should usually be proved by the testimony of the parties themselves, the acts of the parties may be such as to justify an inference that they believed that the instrument was correctly written.   p. 505.

From Clinton Circuit Court; *Paul M. Souder,* Special Judge.

Suit by John R. Wiley and others against William T. Isaacs and others to reform and foreclose a mortgage, in which the named defendant filed a cross-complaint to quiet his title.   From a decree for plaintiffs, the defendants appeal.   *Affirmed.*   By the court in banc.

*Montgomery & Montgomery,* for appellants.

*Harry C. Sheridan* and *Parr & Parr,* for appellees.

McMahan, C. J.—Complaint by John R. Wiley, William H. Wiley, Martha E. Wiley and Isabel M. Pressly to recover on certain promissory notes executed by Roscoe W. and Olive DuVall as part payment for certain real estate which the DuValls had purchased from the plaintiffs, and for the reformation and foreclosure of a mortgage given to secure the payment of the notes. Appellant William T. Isaacs denied the right to a reformation of the mortgage as to him and filed a cross-complaint to quiet his title as an innocent purchaser and owner of the real estate. There was a judgment in favor of plaintiffs, hereinafter referred to as appellees, for the amount due on the several notes, and a decree reforming the mortgage and foreclosing it as against all defendants. There was also a decree in favor of appellees on the cross-complaint.

The court found the facts to be, in substance, as follows: Appellees being the owners of a 250-acre farm in Boone county, described as the south half of a certain section, except seventy acres off the east end thereof, entered into a written agreement under date of September 8, 1919, to sell the same to Roscoe W. and Olive DuVall, and on September 10, 1919, they by their warranty deed conveyed the land to the DuValls, who executed to appellees their promissory notes aggregating $26,000, in addition to $15,250 of the purchase price which had been paid in cash. More than a year later, the DuValls, being in default with reference to the payment of said notes and other notes, executed and delivered to appellees a mortgage, by the terms of which they intended to secure the payment of said notes and to mortgage the real estate so sold for that purpose, but, by reason of the mutual mistake of parties, the real estate was described in the mortgage as "an undivided one-fourth" of the real estate so sold by appellees, all of the parties to the mortgage at the time believing it

contained a correct description of the land so sold and conveyed. After the execution and recording of this mortgage, the DuValls sold and conveyed the 250 acres to Charles M. Tumey, who, with his wife, later conveyed the same to F. M. Peek, both Tumey and Peek having knowledge of the existence of the mortgage and that the DuValls were then owing appellees for the purchase price of the land and the amount due on the said notes. The deed to Tumey recited that the conveyance was "subject to a first mortgage indebtedness in the sum of $24,800, and all accrued interest." After the notes became due and while they were in the hands of an attorney for collection, Tumey, in writing, offered to convey the 250 acres to appellees, and, in such proposal, recognized the mortgage as covering the whole of the 250 acres. Within three months from the date of the conveyance from the DuValls to Tumey, the latter conveyed the 250 acres, with other land, to Marion Peek of Jackson county, the consideration named being one dollar and other valuable considerations. This deed was made "subject to a first mortgage of $26,000, on an undivided one-fourth interest in the above described real estate," and specifically identifying the mortgage given to appellees. This deed to Peek was dated January 30, 1924, but was not recorded until April 18, 1924. In February, 1924, Peek was in correspondence with appellees' attorney relative to paying a part of the principal debt, back interest and taxes, and, after having been informed that the debt must be paid by March 1, Peek, on February 28, wrote the attorney he was doing everything he could to get the matter settled and promised to do so the first of the week and asking for more time. Peek at that time believed the mortgage covered the whole of the 250 acres and acted upon that theory in his correspondence. Peek, by deed dated March 11, 1924, conveyed the 250 acres to appellant William T. Isaacs

of Jackson county, the consideration named in the deed being one dollar and other valuable consideration. This deed was made subject to a "first mortgage of $26,000, said mortgage dated August 16, 1921, and being given to secure the payment of said mortgage on an undivided one-fourth interest" in the 250 acres and specifically identifying the mortgage given to appellees. On March 25, 1924, which was after the date of the deed to Isaacs and after commencement of this suit, Peek wrote a letter in reply to a letter from appellees' lawyer concerning the foreclosure suit and stated he had two buyers to whom he was trying to sell the farm and who would have paid off the whole debt if they had secured the farm, and promised to come in and see the lawyer the last of that week. Appellees' complaint to foreclose was filed March 18, 1924. Peek and Isaacs were first informed of the mistake in the mortgage some time later when they received such information when in the Recorder's office with a real estate man who showed them the record of the mortgage. When Isaacs received his deed from Peek, he did not know Peek had a deed for the real estate. On the day the real estate man informed Peek and Isaacs of the mistake in the mortgage, they went to the office of this real estate man and requested the latter to take them out to see the farm, Isaacs then stating that he wanted to look at the farm with a view of buying it. The three went to the farm and walked over it. Nothing was said by Isaacs at that time about having a deed to it, although that was after the date of the deed to him and after the suit to foreclose had been commenced. When this action was commenced and until the time when Peek and Isaacs were informed of the mistake in the mortgage, each and all of the defendants except Isaacs believed the mortgage covered all of the 250 acres, and Isaacs could have known this belief by making reasonable examination

and inquiry, and should have known of such belief, and at the time he took and accepted the conveyance from Peek, he knew, or could have known by reasonable examination and inquiry, and should have known, of the mutual mistake that was made in the execution of such mortgage. At the time of the trial, October 14, 1924, the fair value of the 250 acres was $20,000. There was also a finding of the amount due each of the appellees.

On these facts, the court concluded as a matter of law that appellees were entitled to a judgment against the DuValls for the amount due on account of the notes and mortgage, that the mortgage should be reformed and foreclosed against all the defendants, including Isaacs, and that the latter should take nothing by his cross-complaint to quiet title. The errors assigned are that the court erred: (1) In its conclusion of law; and (2) in overruling appellants' motion for a new trial.

In *Harper* v. *Combs* (1907), 61 W. Va. 561, 56 S. E. 902, cited by appellants, Combs made a trust deed in January, 1889, to secure a debt due Harper. It was the intention to include in the deed three tracts then owned by Combs, but, by mistake, one of these tracts was omitted and a tract which he had theretofore sold was inserted in the deed. In March, 1892, the trustee under the deed sold the tracts described in the deed to Harper. In 1901, Combs sold the omitted tract to Arthur and Arthur, and soon thereafter Harper brought suit to reform the trust deed and the deed from the trustee. From a decree against him, Harper appealed. Combs died pending suit and Harper thereby became incompetent to testify. The decree denying reformation was affirmed for the reason that the Supreme Court could not say the claim of Arthur was void as to the right of Harper. In other words, the evidence was sufficient to

sustain the decision of the trial court, and that Arthur did not know of the mistake.   In discussing the question of laches, the court, after stating that Harper did not discover the mistake until after the deed to the Arthurs, and after reviewing the authorities to the effect that when a party relies on ignorance as an excuse for his laches and delay in asserting his rights, he must show why he was so long ignorant and acquit himself of all knowledge of facts which would have put him on inquiry, and must show how and when he first acquired knowledge of the facts, and disposed of the case in the following language: "The circuit judge upon evidence somewhat conflicting and inconclusive and indefinite has dismissed the bill.   'A decree of a circuit court founded on conflicting and contradictory testimony will not be disturbed, unless plainly erroneous.'"

In *Mathews* v. *Benevides* (1898), 18 Tex. Civ. App. 475, 45 S. W. 31, there had been a delay of twenty-five years with no claim that the mistake was a matter of recent discovery.   The action of the trial court in sustaining a demurrer to the complaint was sustained and, in so doing, the court said:   "We regard it as unnecessary now to cite authorities in support of the rule that a delay of twenty-five years in bringing an equitable proceeding of this character, with knowledge of the alleged mistake and its effect upon the title, will subject the claim to the rule of stale demand, unless the delay is shown to have been attended with some excuse that a court of equity should recognize as sufficient."   In referring to the failure to allege that the mistake was a matter of recent discovery, it was said:   "And it must therefore be taken to have been known to all parties concerned from the time the deed was executed, and the allegations imply as such."

These decisions, however, are not sufficient to justify

us in holding, as a matter of law, that the facts found by the court prevent a recovery on the ground that appellees were guilty of laches.

No objections were made to the complaint on the ground that it did not show how or when the mistake was discovered, or why it was not discovered sooner.

The notes given for the purchase price of the land were due five years from date, and were held by four individuals. The interest was payable semi-annually, with a provision in the mortgage that if there was a default of six months in the payment of any installment or interest, the holder of such note had the right to commence an action to foreclose the mortgage. The interest was paid on all of these notes up to August 16, 1922, the next installment of interest became due February 16, 1923, and not being paid, a right to foreclose the mortgage accrued in August, 1923, and the foreclosure was commenced in March, 1924. We do not believe the facts are sufficient to authorize us in holding that it is necessary for the special finding to show how or when the mistake was discovered or why it was not discovered sooner, when all of the parties, as late as February, 1924, were acting upon the theory that the mortgage covered the whole of the 250 acres.

Appellants next contend that in an action against a subsequent purchaser, a mortgage can be reformed because of mistake only when such purchaser has "actual notice" of the mistake. In *Easter* v. *Severin* (1878), 64 Ind. 375, the court held the several paragraphs of the complaint insufficient for the reason that there was a failure to "allege a mutual mistake of fact in the mortgage in suit, by all the parties thereto, and that appellant had actual knowledge of such mistake at the time he received his deed of the real estate described in said paragraphs." Five Indiana

cases were cited by the court in support of the statement quoted, but none of them support the statement that actual knowledge is necessary. Indeed, one of the cases cited: *First Nat. Bank* v. *Gough* (1878), 61 Ind. 147, clearly recognizes that a subsequent purchaser may be put on inquiry, and that, when put upon inquiry, he is bound by such knowledge as he by the exercise of reasonable diligence could discover. In *Pence* v. *Armstrong* (1883), 95 Ind. 191, it was said that such a purchaser was "bound by either actual or constructive notice," and in *Singer* v. *Scheible* (1887), 109 Ind. 575, 583, 10 N. E. 616, the court said: "That which shall be sufficient to put the party upon inquiry, is notice." "The principle is elementary," said the court in *Webb* v. *John Hancock, etc., Ins. Co.* (1904), 162 Ind. 616, 635, 69 N. E. 1006, 66 L. R. A. 632, "and one well supported by authorities, that where one has knowledge of facts sufficient to excite the attention of a person of ordinary prudence and put him upon further inquiry, he is required to make such inquiry in good faith and with diligence, and, in the absence of so doing, he will be chargeable with the knowledge of the particular point or fact which such inquiry would have revealed or imparted." To the same effect see *Indiana, etc., R. Co.* v. *McBroom* (1888), 114 Ind. 198, 15 N. E. 831.

Appellants also contend that the decision of the court is not sustained by sufficient evidence. In support of this contention, appellant insists there is no evidence that the mortgage was executed and accepted by the parties with the belief that it contained a correct description of the real estate. While, as a rule, it would seem this belief should be proved by the testimony of the parties, the acts of the parties may be such as to justify an inference that they believed the property was correctly described. The evidence in the instant case is sufficient to warrant the inference that

the parties at the time of the execution of the mortgage believed it correctly described the whole of the 250 acres and that the mistake was a mutual mistake of the parties. There was no error in overruling the motion for a new trial.

Judgment affirmed.