The Louisville, New Albany and Chicago Railway Co. *v.* Flanagan *et al.*

No. 13,047.

THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY *v.* FLANAGAN ET AL.

COMMON CARRIER.—*Railroad.*—*Failure to Furnish Transportation.*—*Delivery of Goods.*—While a carrier is not liable for failing to furnish cars or to transport goods, unless offered at a usual or designated place for receiving freight, yet where goods are placed at a station upon the line of a railroad to be transported, the refusal of the carrier, upon demand, to furnish cars for the transportation of the property relieves the owner from making any further delivery or offer to deliver.

SAME.—*Reliance Upon Contract.*—*Seeking Other Means of Transportation.*—*Reduction of Damages.*—While one who is subject to injury from the breach of a contract must make reasonable exertions to reduce his damages as much as practicable, yet where he delivers goods upon the line of a railroad in pursuance of a contract with the company for their transportation, he may rely upon the fulfilment of the contract, without attempting to obtain other modes of transportation, until he receives notice of the refusal or inability of the carrier to execute its contract.

SAME.—*Contract.*—*Acceptance of Proposition.*—*Notice.*—*Presumption.*—Where a complaint to recover for the breach of an alleged contract avers that the plaintiff contracted with the defendant, and that the terms of the contract are set forth in a letter written on behalf of the defendant to plaintiff, it will be presumed that whatever was necessary in the way of accepting and giving notice of the acceptance of the terms proposed in the letter, in order to complete the contract, took place.

SAME.—*Mutuality.*—*Estoppel.*—If a contract, although not originally binding for want of mutuality, be nevertheless executed by the party not bound, so that the other party has actually received the benefit contracted for, the latter will be estopped from refusing performance on his part on the ground that the contract was not originally binding on the party who has performed.

SAME.—*Ultra Vires.*—*Contract Before Completion of Road to Carry Freight.*—A contract entered into by a railroad corporation before the completion of its line of road, for the transportation of freight after the completion of its line, is not *ultra vires*, but is binding and enforceable.

SAME.—*Receiving Benefits of Void Contract.*—*Estoppel.*—A corporation which has received the consideration and retained the benefits of a contract which has been fully executed by the other party thereto, can not assert that it had no power to make such contract.

SPECIAL VERDICT.—*Form.*—*Discretion of Trial Court.*—Counsel may prepare and ask to have submitted to the jury such forms of a special

The Louisville, New Albany and Chicago Railway Co. *v.* Flanagan *et al.*

verdict as in their judgment the evidence justifies the jury in returning; yet the degree of supervision which the trial court may exercise in such matters is left largely to its discretion.

SAME.—*Harmless Error.*—A party who is not harmed by the refusal of the trial court to strike out parts of a special verdict, on the ground that they embrace nothing more than conclusions of law, can not predicate available error on such ruling.

From the Clinton Circuit Court.

*G. W. Easley, G. W. Friedley, G. R. Eldridge, S. O. Bayless* and *W. H. Russell,* for appellant.

*F. M. Trissal,* for appellees.

MITCHELL, C. J.—Samantha A. and James W. Flanagan, partners doing business under the firm name of S. A. Flanagan & Co., commenced this suit against the appellant railway company to recover damages for the alleged violation of certain contracts which the plaintiffs charge were duly entered into between the parties to this action.

The complaint consisted of three paragraphs. In the first it is alleged that, in the month of October, 1882, the plaintiffs were the owners of a manufacturing establishment and machinery for the manufacture of staves and heading, located at Fisher's Station, on the line of the Wabash Railway, and that, on the above mentioned date, the defendant agreed with them that if they would move their establishment to the town of Sheridan, on the line of its railway, it would carry staves and heading for them as cheap as the Wabash or Big Four roads, which were competing lines for the shipment of freight to the city of Indianapolis. It is also alleged that the defendant company agreed that it would be ready to receive and transport all staves or heading which the plaintiffs might furnish at points on the line of its road by the 15th of November, 1882. The complaint further charges that, relying on this agreement, the plaintiffs moved their factory and machinery to Sheridan, and commenced manufacturing staves and heading in October, 1882. That, from November 15th, 1882, until March 26th, 1883, the plaintiffs had on the line

of the defendant's railway at Sheridan staves and heading of the aggregate value of fifteen thousand dollars, which they were willing and anxious to have the defendant receive and transport, and for the transportation of which they demanded cars, which the defendant neglected and refused to supply. This paragraph avers that the plaintiffs were damaged in a large sum for the cost of ricking and insuring the staves and heading, and for the depreciation in value of their property which was caused by checking, cracking and mildewing, and for interest on the money invested.

The second paragraph alleged that the defendant, in a certain writing which is set out, proposed to the plaintiffs to carry such freight and property as they were engaged in manufacturing and handling, at a stipulated price per hundred weight, upon which price the company agreed to pay a rebate of two cents per hundred, in case the plaintiffs transported, or furnished for transportation, to Indianapolis, one hundred car-loads within a designated period. . It was averred that the plaintiffs accepted the proposal so made, and delivered for transportation to Indianapolis, over the defendant's line, more than the designated number of car-loads within the time limited, and that they paid the freight at the price agreed upon, but that the defendant refused to pay the two cents per hundred rebate, which the plaintiffs alleged amounted to one thousand dollars.

The facts set up in the third paragraph involve substantially the same principles as are involved in the second.

There was a verdict and judgment for the plaintiffs below.

On behalf of the railway company, it is now contended that the first paragraph of the complaint does not state facts sufficient, and that the demurrer thereto should have been sustained, because, it is said, there is nothing in this paragraph to show any delivery, or any offer to deliver, any goods whatever to the railroad company for transportation.

It is undoubtedly true that a carrier is not liable for failing to furnish cars, and for not transporting goods, unless

goods are offered at a regular depot, or other usual or designated place for receiving freight. 3 Wood Railway Law, 1580.

The averment in the first paragraph of the complaint is, in substance, that the plaintiffs had staves and heading of the value of fifteen thousand dollars on the line of defendant's road at the town of Sheridan, which they were willing and anxious to have the defendant receive and transport, and that they often demanded of it, during the time the goods were so on its line, that it furnish cars and transport the staves and heading according to its contract, which it wholly neglected and refused to do.

Within the ruling in *Louisville, etc., R. W. Co.* v. *Godman,* 104 Ind. 490, the refusal of the company, upon demand, to furnish cars for the transportation of goods, such as those described, which are alleged to have been placed at a station upon its line to be transported, relieved the plaintiffs from making any further delivery, or offer to deliver.

All that can be done by the owner of goods of the character and quantity of those described, which are designed for transportation, is to place them contiguous to the railway company's track, at some usual or properly designated place, and request the company to furnish cars and receive the goods.

It is objected that the second paragraph of the complaint is defective, in that it is not alleged therein that the plaintiffs notified the railway company of their acceptance of its proposition to carry freight and pay a rebate, as in the second paragraph stated.

Further objection is made to this paragraph on the ground that it does not allege that the one hundred and fifty carloads therein alleged to have been delivered for transportation by the plaintiffs were so transported in pursuance of the contract declared upon. It is urged, moreover, that the contract relied upon is invalid for want of mutuality, in that the plaintiffs came under no obligation to transport their goods by the defendant's line. The contract, it is contended, merely

gave them the option to have their freight transported, without binding them to anything."

The paragraph is not so definite and certain in the respects referred to as the rules of good pleading would commend. It is averred, however, that the "plaintiffs contracted with the defendant," and that the terms of the contract are set forth in a certain letter written on behalf of defendant to the plaintiffs. Whatever was necessary, therefore, in the way of accepting and giving notice of the acceptance of the terms proposed in the letter, in order to complete the contract, must be presumed, under the above averment, to have taken place.

If the defendant had desired that the averment should be made more specific, so as to disclose more particularly what was done, a motion to that end would have been appropriate. So, it is alleged further in the complaint, that the plaintiffs "shipped" one hundred and fifty car-loads of goods from Sheridan to Indianapolis during the period within which the contract stipulated that if one hundred car-loads should be transported, a certain rebate was to be paid.

Although not averred in terms, the irresistible inference arises that the goods were transported under the contract.

It is quite true, as a general rule, that an offer of a bargain or proposition by one person to another, even though it be accepted by the other, is not enforceable as a contract unless the parties are mutually bound by corresponding obligations.

Thus, in *Chicago, etc., R. R. Co.* v. *Dane*, 43 N. Y. 240, which was an action to recover damages for the breach of an alleged contract to carry and transport a quantity of railroad iron from New York to Chicago, it appeared that the contract relied on consisted of a letter from the railroad company to the plaintiff, in which the company proposed to receive and transport a certain quantity of railroad iron to the place mentioned at a stipulated price. The proposition was accepted. In a suit against the railroad company for refusing to carry the iron according to the terms proposed, the court held that, inasmuch as the plaintiff had not bound him-

self to furnish the iron for transportation, the contract was without consideration, and, therefore, invalid for want of mutuality. *Riggins* v. *Missouri River, etc., R. R. Co.,* 73 Mo. 598; *Tilley* v. *County of Cook,* 103 U. S. 155.

The distinction between the present case and *Chicago, etc., R. R. Co.* v. *Dane, supra,* is found in this: In the case cited the company refused to abide by the contract, or transport the iron, while in this the contract was fully executed in all respects, except that the company refuses to pay the rebate agreed upon. The present case is, therefore, within the rule which declares that if a contract, although not originally binding for want of mutuality, be nevertheless executed by the party not originally bound, so that the party asserting the invalidity of the contract has actually received the benefit contracted for, the latter will be estopped from refusing performance on his part on the ground that the contract was not originally binding on the other, who has performed. *Tucker* v. *Tucker, ante,* p. 272; *Laboyteaux* v. *Swigart,* 103 Ind. 596; *Willetts* v. *Sun Mutual Ins. Co.,* 45 N. Y. 45.

It follows that there was no error in overruling the demurrer to the complaint.

After the evidence was heard the plaintiffs below, having requested that the court require the jury to find a special verdict, submitted to the court the form of a verdict, such as they claimed should be returned by the jury. The defendant objected to the form so submitted, and moved the court to strike out certain parts thereof, on the ground that, if returned, such parts would state nothing more than conclusions of law. This motion was overruled. Afterwards the jury returned the special verdict so submitted to them as their verdict. The appellant objected to the receiving of the verdict, upon substantially the same grounds as those upon which its previous motion to strike out certain portions was predicated. This objection was also overruled, and the verdict was received and recorded. It is now argued with much

elaboration that the court erred in its rulings on the above mentioned motions.

It is, of course, proper for counsel to prepare, and ask to have submitted to the jury, such forms of a special verdict as in their judgment the evidence which has been heard justifies the jury in returning. Ordinarily no careful or competent attorney would neglect so important a matter as this. *Pittsburgh, etc., R. W. Co.* v. *Ruby*, 38 Ind. 294 (10 Am. R. 111).

The degree of supervision which the court may exercise over the forms submitted must manifestly be left largely to its discretion, since it is the duty of the court to instruct the jury so far as to enable them clearly to comprehend the matters in issue and the subjects to be covered by the special finding. *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18. The special findings should, of course, be limited to the case made by the pleadings, and should find all the facts without stating conclusions of law, but if findings are returned containing matters outside of the issues, or which are merely items of evidence, or conclusions of law, such findings will be disregarded, and no one is harmed except the party on whose behalf such a finding was prepared. The conclusions of law, as stated by the court, must be supported by the facts found within the issues, and neither mere evidentiary facts nor conclusions of law stated by the jury will be of any avail. *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151.

Conceding all that is said concerning the impropriety and futility of the conclusions stated by the jury, which were in the nature of inferences of law, the appellant was, nevertheless, not harmed by the refusal of the court to strike them out, as requested in the several motions above. *Louisville, etc., R. W. Co.* v. *Frawley*, *supra*, and cases cited.

It is objected next that the court erred in overruling the appellant's motion for a *venire de novo*.

Eliminating from the special finding everything which can fairly be obnoxious to criticism, and it can not be said

to be so uncertain or ambiguous as that no judgment could properly have been rendered thereon. The special findings are full and complete, and they fully support a judgment covering the matters in issue.

Without a more particular reference to the evidence, we need only say it tends to support the plaintiffs' theory of the case, and was, therefore, sufficient to support the special finding of facts.

It is suggested that it appears from the evidence that the contract on which the first paragraph of the complaint is predicated was entered into before the appellant's line was completed. It is said that contracts entered into by railroad corporations before their lines are completed, for the transportation of freight after the completion of their lines, are *ultra vires*. We are aware of no authority which sustains this proposition.

Upon principle, it would seem that the power of a corporation to make such contracts as are promotive of its legitimate business, and which look to the advancement of the primary purpose for which it was organized, should be liberally construed. The authorities support this view. Pierce Railroads, 499; 1 Wood Railway Law, section 169.

The principal purpose contemplated by the corporation in the construction of its line was, doubtless, the transportation of freight. It was, therefore, clearly within its power to make contracts, the object and effect of which would be to contribute to this purpose, and that the contract in question was made in anticipation that its line would be completed at a given date, did not render it *ultra vires*. 1 Wood Railway Law, sections 179, 182. Besides, the contract having been fully executed by the plaintiffs, the corporation can not, while retaining the benefit of it, assert that it had no power to make a contract, the consideration of which it has received. *State Board, etc.,* v. *Citizens Street Railway Co.,* 47 Ind. 407, and cases cited; *Chicago, etc., R. W. Co.* v. *Derkes,* 103 Ind. 520.

The Louisville, New Albany and Chicago Railway Co. v. Flanagan *et al.*

The rule requiring the observance of good faith and fair dealing is as applicable to corporations as to individuals. Neither can involve others in onerous engagements, and, with the consideration of the contract in their possession, disavow their acts, to the damage and discomfiture of others, unless it clearly appears that there was an absolute want of capacity to make the contract.

The appellant contends further, that the plaintiffs were not justified in permitting their goods to await transportation by its line, but that it became their duty to transport their property by some other line of conveyance, and charge the appellant railway company with any difference in the cost of transportation thus incurred over what the cost would have been if the company had carried according to its agreement.

The plaintiffs having delivered their goods upon the defendant's line ready for transportation, they had a right to rely upon the fulfilment of the contract, in pursuance of which they acted, until it was repudiated, or until they were notified that the railway company could not, or did not intend to, transport their goods within a reasonable time. *Louisville, etc., R. W. Co.* v. *Sumner*, 106 Ind. 55 (55 Am. R. 719), and cases cited.

While it is true that one who is subject to injury from the breach of a contract must make reasonable exertions to reduce his damages as much as practicable, and not allow them to be unnecessarily enhanced by his own negligence or misconduct, there is no rule of law which requires one thus circumstanced to execute the contract which the other party recognizes, and claims the right to execute, and for the execution of which the party in default has equal facilities with the other.

We are not called upon in the present case to consider the rule for the measurement of damages in case of the failure of a carrier to transport goods within a reasonable time. We determine nothing further than that it was not competent for the appellant to show, under the circumstances as they ap-

peared, that the plaintiffs might have conveyed their goods to the line of another railroad, by which they might have been transported to Indianapolis. They were, to say the least, not bound to do this until they received notice of the refusal or inability of the appellant to execute its contract.

At the proper time the defendant below requested that a number of instructions, presented on its behalf, be given the jury. The refusal of the court to give the instructions asked is made the subject of discussion.

In view of the fact that a special finding had been requested, if it were conceded that the instructions refused stated the law correctly in the abstract, it would by no means follow that error had intervened on account of the refusal of the court to instruct the jury as requested.

The record discloses that the jury were adequately instructed in respect to all that was essential to enable them to return a special finding of the facts. *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Louisville, etc., R. W. Co.* v. *Frawley, supra.*

There are a number of other questions proposed suggestively in the appellant's brief. They are all disposed of by what has preceded.

Having found no error, the judgment is affirmed, with costs.

Filed Dec. 8, 1887; petition for a rehearing overruled March 3, 1888.