TAYLOR FEED PEN CO. et al. v. TAYLOR NAT. BANK. (No. 5468.)*

(Court of Civil Appeals of Texas. Austin. Oct. 20, 1915. Rehearing Denied Dec. 22, 1915.)

1. INJUNCTION ⬤=70 — RIGHTS OF STOCKHOLDERS—ULTRA VIRES ACTS.

The stockholders of a corporation may restrain it from engaging in enterprises beyond the purposes or manner provided by its charter, since it is in fact only their business agent with a limited authority and has contracted with

⬤=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.

them to spend their money only as provided in the charter.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 136, 137; Dec. Dig. ⬦70.]

2. CORPORATIONS ⬦388 — PUBLIC CORPORATIONS—ULTRA VIRES ACTS—ESTOPPEL.

The doctrine of estoppel of a corporation to plead its ultra vires act as a defense in an action on an obligation incurred thereby does not apply to public corporations, since, where the public is interested, assent of the stockholders is of no avail in permitting corporate acts beyond the powers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. ⬦388.]

3. CORPORATIONS ⬦388 — POWERS — ULTRA VIRES ACTS—RIGHTS OF STOCKHOLDERS.

In an action between a corporation or its stockholders and third parties, the corporation is estopped to plead its ultra vires acts the same as if it were a natural person, where the public has no interest in the litigation, except that the doctrine of estoppel does not apply where the act is one which the corporation could not do under any circumstances.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. ⬦388.]

4. CORPORATIONS ⬦370—POWERS OF CORPORATIONS—IMPLIED POWERS.

The powers of a corporation are not restricted to those expressly conferred by its charter, but include as necessary all those powers which are appropriate.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1518; Dec. Dig. ⬦370.]

5. CORPORATIONS ⬦460—POWERS OF CORPORATION — IMPLIED POWERS — BORROWING MONEY.

The implied powers of a private trading corporation include that of borrowing money and giving security therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1813; Dec. Dig. ⬦460.]

6. CORPORATIONS ⬦388—POWERS—BORROWING MONEY—PURPOSE.

A corporation whose declared purpose was to buy, feed, and sell cattle, which borrowed money and executed a mortgage to secure it, and used the money for another purpose, acted within its power, though it acted wrongfully, so that it was estopped thereafter to deny liability in an action by the lender for its recovery.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. ⬦388.]

7. CORPORATIONS ⬦388—CORPORATE DEBTS—LIABILITY OF STOCKHOLDERS.

Where all the stockholders in a corporation assent to the borrowing of money for a wrongful purpose and to the execution of a mortgage to secure it, the corporation is liable as the aggregation of its stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. ⬦388.]

8. CORPORATIONS ⬦388—CORPORATE DEBTS—ASSENT OF STOCKHOLDERS—EVIDENCE.

Where one individual owned all but two shares of stock in a corporation, the other two shares being given by him with the intent that they should be retransferred to him, so that the purported stockholders had no interest in fact in the business, and where one of such stockholders and the principal owner consented to the giving of a mortgage to secure a loan and the other stockholders became such after the securing of the loan, the doctrine fixing liability of the corporation for the debt on assent of all its stockholders was applicable.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1569; Dec. Dig. ⬦388.]

9. CORPORATIONS ⬦388—ULTRA VIRES—ESTOPPEL.

A corporation which receives the consideration for a mortgage and retains it without offer to return it or which by retaining it destroys its value, receives a consideration for the mortgage, so that it is thereafter estopped to plead ultra vires.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. ⬦388.]

10. CORPORATIONS ⬦388—POWERS—ACTIONS—ESTOPPEL.

Where a corporation borrows money and gives its mortgage therefor, it cannot in order to defeat the mortgage thereafter allege that the mortgagee was in pari delicto with it, knowing that it acted wrongfully and without its express powers, where the contract was fully executed by the mortgagee, especially under the rule that the mortgagee knew that the mortgagor could bind itself if all of its stockholders assented.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. ⬦388.]

11. HOMESTEAD ⬦31— RESIDENCE — NECESSITY.

While actual residence is not necessary to fix the homestead character upon land, the mere intention to occupy land in the future as a homestead, unaccompanied by affirmative acts evidencing the intention, is insufficient to create a homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 39; Dec. Dig. ⬦31.]

Appeal from District Court, Williamson County; C. A. Wilcox, Judge.

On petition for rehearing. Rehearing granted, and judgment of trial court affirmed.

Former opinion (177 S. W. 176) withdrawn.

White, Cartledge & Graves, of Austin, and Wilcox & Graves, of Georgetown, for appellant. H. C. Mantor, of Taylor, and Batts & Brooks, of Austin, for appellee.

### Findings of Fact.

JENKINS, J. 1. Appellant's charter was filed with the Secretary of State July 5, 1910. The declared purpose of said corporation was to buy, feed, and sell cattle. Its capital stock was stated to be 90 shares of $100 each, fully paid up.

2. The only consideration received by appellant for its capital stock was a deed to the land in controversy from F. E. Ripley and wife. The market value of the land at the time was $9,000.

3. F. E. Ripley, by virtue of the execution of said deed, was entitled to all of the stock of said company; but, in order to comply with the statute requiring at least three stockholders to organize a corporation, he gave to E. B. Martin and J. B. Wills each one share of said stock, and they were named in the charter as directors.

4. There was never any part of said stock issued, never a meeting of the stockholders, no election of officers, and said corporation never transacted any business, except to execute the notes and mortgages hereinafter mentioned, and to collect from the assignee in bankruptcy of the Taylor Oil Works its

pro rata portion of the debt assigned to it by appellee.

5. S. E. Ripley owned $15,000 of the stock of the Taylor Oil Works and was its general manager upon a salary of $300 per month. He was not personally liable on the indebtedness of the Oil Works for the debt for the payment of which the money was borrowed by appellant, but he was personally liable upon other debts owing by said oil works to the amount of about $45,000, and the oil works was indebted to him to the amount of from $40,000 to $50,000. The $6,500 paid with the money borrowed by appellant was due appellee by the oil works on open account, but was amply secured by a mortgage on the property of the oil works. Appellee desired said debt paid, in order to reduce the amount owing by the oil works within the amount which it was permitted by the national bank law to loan to one person. Ripley was anxious to pay the $6,500 to appellee, but could not borrow the money except by mortgaging the land in controversy, which he offered to do; but, having stated to appellee that it was his homestead, appellee declined to take a mortgage thereon. It was thereupon agreed between appellant and appellee that Ripley would obtain a charter for a feed pen company, deed the land to the corporation for its capital stock, and that the corporation would borrow the money from appellee, execute a mortgage on said land to secure the same, and pay said money on the open account indebtedness of the oil works to appellee. This was done; that is to say, on July 26, 1910, appellant executed to appellee a note for $6,500, and a deed of trust on the land in controversy to secure the same. March 6, 1911, said note being unpaid, it executed a renewal note for said amount with the interest added, and executed another deed of trust on said land to secure the same.

6. In order to comply with the statute requiring at least three stockholders in order to obtain a charter, Ripley requested E. B. Martin and J. B. Wills to join him in the application for the charter, stating that they were each to be the owners of one share of stock of the par value of $100, but that the same would be paid for by him. They consented to this and were named in the charter together with Ripley, as directors.

7. Prior to the execution of said note and mortgage, Ripley and Martin signed what in terms was a written resolution of the board of directors of the Taylor Feed Pen Company authorizing the execution of the note and mortgage. Wills was temporarily absent at the time.

8. Upon the execution of the note and mortgage by appellant, appellee placed $6,-500 to the credit of appellant, which amount appellant immediately had transferred to the credit of the oil works, and the oil works was credited with that amount on its indebtedness to appellee. The oil works charged itself on its books with that amount in favor of appellant, and said charge was so carried on the books of the oil works up to the time it became bankrupt.

9. Subsequent to the execution of said note and mortgage, the oil works was adjudged a bankrupt; just when this occurred, the record does not show; and Ripley, for appellant, filed its claim for $6,500 and was paid its pro rata share of the estate of said bankrupt, which was $390. This money has never been tendered by appellant to appellee.

10. Appellant filed this suit to cancel its note and mortgage to appellee, alleging that said mortgage constituted a cloud upon its title. The original petition is not in the record, and it does not appear when it was filed, further than that appellees' original answer, which was filed November 5, 1912, alleges that the original petition was filed in 1912.

11. Appellee, in addition to a general demurrer, a general denial, and a plea of estoppel, filed a cross-action to recover on the note and to foreclose the mortgage.

12. Mrs. Willie Ripley, wife of F. E. Ripley, intervened, and claimed the land in controversy as her homestead. Her husband refused to join her in such intervention.

13. The case was tried by the court without a jury, and judgment was rendered that the appellant and the intervener take nothing by their suits, and that appellee recover upon its cross-action.

14. As to the homestead claim of intervener, we find the following facts: In January, 1901, F. E. Ripley, the husband of the intervener, purchased 320 acres of land, of which the land in controversy is a part. He owned no homestead at the time and has not since acquired one. He intended at the time of the purchase to establish his home on some portion of this tract whenever he felt able to build such a house as he desired, and he had not abandoned that intention when the mortgage to appellee was executed. Subsequently, he sold all of said tract except the 58.42 acres in controversy. When he deeded this land to the appellant, he expected it to deed it back to him in consideration of the surrender of his stock, as soon as the note here in question was paid. The intervener and her husband had frequently gone over the land and had tentatively selected several places as suitable for a building site when they were able and ready to build, but otherwise they had done nothing to dedicate the land to homestead purposes. They have never resided on the land or any part thereof.

## Opinion.

In our former opinion herein (177 S. W. 176) we held, in effect, that a mortgage executed by a corporation to secure the debt of another corporation in which it had no interest, which debt was not incurred for its benefit, and the payment of which did not inure to its benefit, was ultra vires. We have no doubt as to the correctness of this holding,

where there are no qualifying or limiting facts which would estop the corporation; but, upon further consideration, we have concluded that we fell into error in applying this doctrine to the facts of this case, for which reason our former opinion is withdrawn, and this opinion is substituted in lieu thereof.

The doctrine of ultra vires was invented by the courts (Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. [N. S.] 795, 120 Am. St. Rep. 621), and, in a proper case, we think that it is a salutary one. For instance, a public corporation whose only function is governmental, and that derives its revenues from taxation, ought not to be permitted to engage in enterprises beyond the scope of its authority; neither should a public service corporation be permitted by contract to deprive itself of the power to discharge the duties which by the charter that gave it existence it owes to the public. Again, it is held, and we think properly so, that a corporation cannot be compelled to perform a contract which it had no capacity to make under any circumstances. This for the reason that every one is charged with constructive notice of the provisions of charters, which are public documents, or granted under the provisions and limitations of general statutes, as is the case with municipal corporations in this state.

As to private corporations created for business purposes, the doctrine of ultra vires has been so limited by applying to them the doctrine of estoppel as to almost destroy it. This has arisen from necessity brought about by modern conditions, and in order to avoid injustice being done. The original common-law conception of a corporation was a body politic for municipal, ecclesiastical, or eleemosynary purposes; but it has been extended, especially in recent times, until it embraces practically every known form of business enterprise. Why should those artificial persons be permitted to repudiate their contracts to the detriment of third parties, where natural persons are not permitted to do so? There is no want of mental capacity, as is the case with minors; but, on the contrary, they are usually managed with business sagacity.

[1] As to public and quasi public corporations, the reason is as above stated; in suits by stockholders against the corporation, they are permitted to restrain the corporation from engaging in enterprises except for the purposes and in the manner provided by its charter, for the reason that the corporation is their business agent with limited authority, and has in effect contracted with them that it will not use their money, which was paid into its treasury for its stock, except as provided in the charter.

The foregoing observations are sustained by numerous authorities, some of which we cite in subsequent portions of this opinion.

The reasons why a corporation may be held not to be liable on an ultra vires contract is: (1) The interest of the public that a corporation shall not transcend the powers granted. (2) The interest of the stockholders that capital shall not be subjected to risks of enterprises not contemplated by its charter, and therefore not authorized by its stockholders in subscribing for the stock. (3) The obligations of every one entering into a contract with a corporation to take notice of the legal limits of its powers. McCormick v. Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 821, 7 R. C. L. 673.

[2] If the corporation is a public one, the doctrine of estoppel will not apply. Platter v. Board of Com'rs, 103 Ind. 360, 2 N. E. 544; 1 West. 246; Turnpike Co. v. Board of Com'rs, 72 Ind. 239. When the public is concerned to restrain a corporation within the limits of a power given to it by its charter, assent by the stockholders to the use of unauthorized power by the corporation will be of no avail. Kent v. Mining Co., 78 N. Y. 185; Sheldon Co. v. Eickemeyer Co., 90 N. Y. 607.

[3] When the suit is between a corporation or its stockholders and third parties, the general rule is that the corporation may be estopped the same as natural persons. 7 R. C. L. 593; 2 Story, Eq. Jur. § 1539; Merchants' Bank v. State Bank, 77 U. S. (10 Wall.) 604, 19 L. Ed. 1008; Ditch Co. v. Zellerbach, 37 Cal. 543, 99 Am. Dec. 300; Bell v. Kirkland, supra, 102 Minn. 213; 113 N. W. 271, 13 L. R. A. (N. S.) 796, 120 Am. St. Rep. 621; Railway Co. v. Flannigan, 113 Ind. 496, 14 N. E. 370, 3 Am. St. Rep. 674. This is not a suit by the state nor by stockholders to restrain the corporation from doing an unauthorized act, and the public has no interest in the result of this litigation.

The exception to the general rule that a corporation will not be estopped where the suit is between it or its stockholders and third parties is where the act is ultra vires in its strict sense; that is to say, not merely one which it ought not to have done for the reason that the same constituted an abuse of its power, but one which for lack of capacity it could not do under any circumstances, and therefore could not ratify. Transportation Co. v. Pullman Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; Bank v. Globe Works, 101 Mass. 57, 3 Am. Rep. 322; B. & L. Ass'n v. Bank, 181 Ill. 35, 54 N. E. 619, 64 L. R. A. 403, 72 Am. St. Rep. 245; Bell v. Kirkland, supra, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 796, 120 Am. St. Rep. 621. Where the contract is not ultra vires in the sense of a want of capacity, this exception does not apply. Bank v. Globe Works, supra.

[4] The first question which presents itself is: Were the acts of appellant in borrowing the money from appellee, and in executing the note and the security therefor, beyond its corporate powers? That is, was it without capacity to do said acts under any circum-

stances? The question must be answered in the negative.

A corporation is not restricted to the exercise of those powers expressly conferred upon it by its charter, but has certain well recognized, implied powers which are necessary to carry out the powers expressly granted. These implied powers are not restricted to those that are indispensably necessary, but comprise all that are necessary in the sense of being appropriate. 7 R. C. L. 528, 529; Grommes v. Sullivan, 81 Fed. 45, 26 C. C. A. 320, 43 L. R. A. 425; Railway Co. v. Howard, 74 U. S. (7 Wall.) 392, 19 L. Ed. 121.

[5] Among the implied powers of a private trading corporation is that of borrowing money and giving security therefor. Boone v. Gas Co., 118 Ky. 588, 81 S. W. 928; Railway Co. v. Howard, supra; note to B. & L. Ass'n v. Bank, 11 L. R. A. 845, 846; 7 R. C. L. 593; Wright v. Hughes, 119 Ind. 328, 330, 21 N. E. 907, 12 Am. St. Rep. 412; State Board v. Railway Co., 47 Ind. 407, 17 Am. Rep. 702.

[6] It cannot be doubted that had appellant borrowed money to be used in buying or feeding cattle, which was the declared purpose of its charter, and had executed a mortgage on its land to secure the same, the contract would have been enforceable. It did borrow the money. That it used it for a purpose other than that contemplated by its charter does not show that it did not have the power to borrow the money, but only that it used such power for a wrong purpose. If a corporation has the power to do a given act for a proper purpose, it is immaterial that it used it for an improper purpose. Bradley v. Ballard, 55 Ill. 413, 8 Am. Rep. 657. This is precisely the case where a corporation will be estopped, under a proper state of facts, to plead ultra vires. What are those facts as applicable to the instant case?

[7] First. A corporation will be estopped to plead ultra vires to an act within the general scope of its powers where all of its stockholders assented to such act. Insurance Co. v. Barber, 67 Neb. 644, 93 N. W. 1024, 60 L. R. A. 927, 928, 108 Am. St. Rep. 716. The reason for this is that, although by fiction of law a corporation is an entity separate and apart from its stockholders, and as such has the legal title to the corporate property, "equity will not forget that the stockholders are the real and substantial beneficiaries of a recovery," and, "if the stockholders have no standing in equity, * * * the corporation will not be permitted to recover." Insurance Co. v. Barber, supra.

If all of the stockholders in the instant case had obtained the loan in their individual capacity, and had executed the mortgage upon their property to secure the same, of course, it would be enforceable against them. If they assented to such transaction prior thereto, in equity, they stand upon the same footing as if it was their individual trans-

action, and the corporation in such case will be treated simply as the aggregation of its stockholders. Morawetz on Private Corporations, vol. 1, § 1, in discussing corporations as separate entities, says:

"In most cases this is just as well as a convenient means of working out the rights of the real persons interested. However, it is essential to a clear understanding of many important branches of the law of corporations to bear in mind distinctly that the existence of a corporation independently of its shareholders is a fiction, and that the rights and duties of an incorporated association are in reality the rights and duties of the persons who compose it, and not of an imaginary being."

See, also, the same author, section 227, and Donovan v. Purtell, 216 Ill. 629, 75 N. E. 334, 1 L. R. A. (N. S.) 176, and note to that case; Gas Co. v. West, 50 Iowa, 25; Martin v. Mfg. Co., 122 N. Y. 172, 25 N. E. 303; 7 R. C. L. 27.

[8] We think that the doctrine that the previous assent of all of the stockholders will bind the corporation might well be applied to this case upon the theory that F. E. Ripley was the real owner of all of the stock of the feed pen corporation. He organized said corporation for no other purpose than to carry into effect the transaction here involved; he paid for all of the capital stock by transferring the land in question to the corporation. In order to comply with the statute, he nominally gave to Martin and Wills one share each; no stock was ever issued to them, nor intended to be so issued; the corporation never transacted any business named in its charter, and never intended to do so; it was the intention, upon the payment of the note involved herein, to reconvey the land to Ripley, we think evidently without Ripley's paying anything to Martin or Wills for their stock, which, together with the Ripley stock, would have been surrendered as a consideration for such reconveyance, in which event it was intended that said corporation should cease to exist. This tends strongly to show, to say the least of it, that the incorporation of appellant was but a method resorted to by Ripley to transact his own business. In reply to an inquiry in the bankruptcy proceedings as to the feed pen corporation, Ripley said, "That is me," and we think this was true. Pott v. Schmucker, 84 Md. 535, 36 Atl. 592, 35 L. R. A. 392, 57 Am. St. Rep. 415; Swift v. Smith, 65 Md. 428, 5 Atl. 534, 57 Am. Rep. 336.

However, it is not necessary to rest this case on this assumption, and, as the trial court made no specific finding in reference thereto, we do not do so; but we think that the judgment of the trial court should be affirmed upon the assumption that all of the stockholders, including Martin and Wills, assented to the transaction here involved. The trial court so found, and, while there is no direct testimony to sustain such finding, we cannot say that there was no evidence upon which to base such finding. On the contrary, we think that such finding is a reasonable,

if not the only reasonable, conclusion at which the court could have arrived from all of the circumstances in evidence. There can be no question as to the assent of Ripley and Martin, inasmuch as they signed a resolution authorizing the transaction, and we think it improbable that the purpose of the corporation to sign the note and mortgage was not explained to Wills, and that he did not assent thereto when he agreed to become a director therein for the accommodation of Ripley.

[9] Second. We think the judgment of the trial court should be affirmed for the reason that appellant, having received a valuable consideration for the execution of the note and mortgage, and not having tendered back the same, is estopped to plead ultra vires. Railway Co. v. Gentry, 69 Tex. 632; B. & L. Ass'n v. Bank, supra; Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 662; McCormick v. Bank, supra; Lumber Co. v. Rice, 23 Ind. App. 586, 55 N. E. 868; Insurance Co. v. McClelland, 9 Colo. 18, 9 Pac. 771, 59 Am. Rep. 134; 7 R. C. L. 594; Railway Co. v. Doerkes, 103 Ind. 525, 3 N. E. 239; Railway Co. v. Flannigan, 113 Ind. 495, 14 N. E. 370, 3 Am. St. Rep. 674; Wright v. Hughes, supra; 7 R. C. L. 677.

In B. & L. Ass'n v. Bank, supra, the court said:

"We think the authorities are abundant to show that the corporation is estopped from alleging a want of power to borrow the money in question without offering to refund the money already advanced and used for" its benefit—and so think we in this case.

If it be said that it did not use the money for its own benefit, but for the benefit of appellee, it may be answered that it received from appellee $6,500, no part of which it has repaid or offered to repay; it received from appellee the transfer of a debt on the oil works for that amount, which it has not reconveyed nor offered to reconvey. What this debt was worth to appellant at the time it was assigned to it is not made to appear, but presumably it was worth its face value, as it is not made to appear that the oil works was then insolvent. But it does appear that this debt was then worth its par value to appellee, inasmuch as it had ample security therefor. If a party be permitted to repudiate a contract, he must do so in toto, by offering to put the other party in statu quo. This appellant has placed it beyond its power to do. By its delay in collecting this debt, or returning same to appellee, it has become comparatively worthless. In Zabriskie v. Railway Co., 64 U. S. (23 How.) 381, 16 L. Ed. 497, the court quoted with approval from the Supreme Court of Ohio, to the effect that corporations should be prompt and diligent in the exposure of illegality or abuse in the employment of their corporate powers, and will be denied relief where mischief has been done by their delay. See, also, Chapman v. Railway Co., 6 Ohio St. 137; Camden Co. v. Mays Co., 48 N. J. Law, 530, 7 Atl. 523.

"The plea of ultra vires should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong." Lumbering Co. v. Portland, 18 Or. 21, 22 Pac. 536, 6 L. R. A. 297; Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 695; Bell v. Kirkland, supra; Raft Co. v. Roach, 97 N. Y. 381.

To allow the plea of ultra vires in the instant case would be, not only to deny to appellee the right to collect the money that it loaned to appellant, but also to deprive it of the value of the debt on the oil works, which it assigned to appellant, and which has became almost worthless by appellant's delay.

But, in addition to the fact that appellant has not tendered back to appellee the debt which was assigned to it, it has appropriated the proceeds of said debt to its own benefit. It filed its claim in bankruptcy against the oil works, collected the full amount paid on said debt, viz., $390, and did not tender that amount to appellee. It is true that Ripley testified that he was willing to pay this amount to whoever might be entitled to receive it, but no such tender was pleaded in this case.

[10] It may be suggested that appellee is in pari delicto with appellant, inasmuch as it knew that appellant intended to use the money borrowed for a purpose not contemplated by its charter, and that it received such money in payment of a debt owing to it by another corporation. This can make no difference in so far as appellant's suit to cancel the note and mortgage is concerned. Appellant cannot make its own wrongful act a weapon of offense. Nor do we think that this constitutes a valid ground of objection against the action of the court in rendering judgment for appellee on its cross-action. The contract had been fully executed by appellee, and, the contract not being one beyond the power of appellant to make under any circumstances, it could not resist compliance on its part. But, aside from this, though it is true that appellee was charged, as matter of law, with knowledge of the provisions of appellant's charter, it also knew, as a matter of law, that appellant could bind itself by the contract entered into, if all of its stockholders had previously assented thereto. We think that appellee was justified in presuming such assent, under all the circumstances of the case, if it did not have actual knowledge thereof.

We do not think the case of Deaton Grocery Co. v. Harvester Co., 47 Tex. Civ. App. 267, 105 S. W. 556, cited by appellant, contravenes the doctrine announced in this opinion. In that case it was not made to appear that Deaton, the general manager of the grocery company, had actual or implied authority to indorse the notes sued on, the same being an accommodation indorsement, nor that the board of directors had authorized such indorsement, nor that the stockholders had as-

sented thereto, nor that the stockholders or the corporation had received any consideration therefor. In addition to this, it was not made to appear that the corporation did not have other creditors whose interests might have suffered by holding the grocery company liable. We believe that these facts differentiate that case from the instant case.

The trial court found that the sole consideration for the execution of the deed from Ripley and wife to appellant was the issuance of its capital stock to Ripley and its agreement to execute the note and mortgage in question, and concluded, as a matter of law, that appellant could not repudiate such contract while holding the land. While the evidence sustains such finding of fact, we think it immaterial for the reason that this is not a suit by the parties to such contract. Ripley, the beneficiary of said contract, is not seeking to enforce it; on the other hand, he is shown to be more than willing to have the appellant repudiate its said agreement.

[11] We affirm the judgment of the trial court as to the intervener. While actual residence is not necessary under all circumstances to fix the homestead character upon land, a mere intention to occupy land some time in the future as a homestead, unaccompanied by any act clearly evidencing such intention, is not sufficient to attach to such land the homestead character. Wiseman v. Watters, 142 S. W. 134; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Town Co. v. Griggs, 93 Tex. 456, 56 S. W. 49; McDowell v. Northcross, 162 S. W. 16; Parker v. Cook, 57 Tex. Civ. App. 234, 122 S. W. 422; Parson v. McKinney, 133 S. W. 1085.

By the word "appellant," as used herein, is meant the Taylor Feed Pen Company. The intervener also appealed from the judgment of the trial court.

For the reasons stated, we grant appellee's motion for rehearing, set aside our former judgment herein, and in all things affirm the judgment of the trial court.

Rehearing granted, and judgment of the trial court affirmed.