## CITY NATIONAL BANK OF AUBURN *v.* BRINK, TRUSTEE.

[No. 14,543.   Filed November 24, 1933.   Rehearing denied
February 23, 1934.]

*Walter D. Stump,* for appellant.

*Arthur W. Parry,* for appellee.

KIME, C. J.—This was a suit brought by a Trustee in

Bankruptcy, to recover a special deposit, deposited in the appellant bank, under an express agreement between said bankrupt, appellant, and certain creditors of bankrupt that such special deposit should be kept and held as such, for the sole purpose of paying current expenses in running the business of the said bankrupt, and the excess to be distributed pro rata among all of the then creditors of said bankrupt, which special account the appellant bank later set off against the debt owing to it by the said bankrupt.

The bankrupt, William D. Houtzer, on January 14th, 1930, was in the retail shoe business in Auburn, Indiana, and had established several branch stores in other cities. His business was in failing circumstances and he was unable to pay his debts when they became due. On the above date three creditors of the bankrupt examined the books of the bankrupt and found there was no way of determining his actual worth; that bankrupt claimed his stock in trade was worth $65,-706.00, which he based on a perpetual inventory made up from invoices of goods to which he had arbitrarily added 30% to the cost; that he claimed his store fixtures were worth $12,000.00 (however, just one month later, in his bankruptcy schedule he estimated these fixtures at the sum of $2,000.00), a deposit in the bank of $594.29 and he claimed his delivery truck was worth $250.00, making his approximate worth $68,550.29. His liabilities amounted to more than $61,443.11 and fifty per cent of his indebtedness was past due. The records in the bankruptcy proceedings showed that the assets in said Bankrupt's estate, excepting the funds in controversy, amounted to $34,219.75 and that claims against said estate, not including costs of administration and claims entitled to priority, amounted to $57,262.49.

That said three creditors went to appellant bank, held a conference with Willis Rhodes, its cashier, acquainted him with the investigation of the affairs of bankrupt's business and secured the agreement of the bank to co-operate in a plan to handle Höutzer's affairs so as to advance the interest of both Houtzer and his creditors and avoid the loss and depreciation incident to bankruptcy proceedings, and at that time appellant bank agreed to receive deposits made by Houtzer thereafter and hold them as a special fund.

That a written agreement was entered into, on the above date, between Houtzer, as the first party, and the bank and the three creditors, as second parties, to the effect that second parties should constitute a creditors' committee, to act in an advisory capacity in the management and operation of Houtzer's business in an attempt to avoid the liquidation, the closing of his business and the consequent loss resulting therefrom; that said contract should become effective at once and continue for a period of ninety days; that Houtzer would continue to operate his business in such manner as to meet the approval of the second parties, deducting a fixed salary plus travelling expenses and the remainder of all gross receipts derived from business to be deposited by Houtzer in appellant bank, disbursement therefrom to be made only with approval of second parties and then only for salaries, and necessary incidental expenses; that Houtzer close his four least profitable stores, and give to the second parties, at the appellant bank, weekly statements showing the condition of the business of each store and that Houtzer should cause a pro rata distribution to be made to all creditors, from time to time, as funds became available therefor, and should exert every reasonable effort to conserve the assets for the benefit of all the creditors.

That letters were sent to the remaining creditors advising them of the arrangements and asking that they each agree to such arrangements.

On January 19th, 1930, a new account was opened with appellant bank as "Red Goose Shoe Store, Special" and, at the same time, the word "regular" was placed after the account of Houtzer then in said bank and that all checks drawn for expenditures permitted by creditors committee were drawn on the special account and on February 7th, 1930, the balance in said special account was $3,932.16. Owing to the fact that one of the creditors intended to bring bankruptcy proceedings against Houtzer a meeting of creditors was called on February 7th, 1930, and after a general discussion was had the meeting disbanded without any action having been taken by the creditors' meeting or by the creditors present at said meeting.

On February 8th, 1930, the bank set-off the entire balance of $3,932.16 by crediting the same on notes owing by Houtzer to the bank. On February 18th, 1930, an involuntary petition in Bankruptcy was filed by some of Houtzer's creditors and Houtzer consented to adjudication as a bankrupt, and on March 11th, 1930, appellee was appointed Trustee, demanded of appellant bank the $3,932.16 being the balance of the special account, and, upon refusal of the appellant bank to deliver the money on such demand, suit was brought by the trustee, and upon the answer and reply, respectively, of the appellant and appellee, the trial was had. At the request of the trustee special finding of facts were made and conclusions of law stated thereon and judgment was rendered in favor of appellee for $4,232.27, being $3,932.16 principal and $300.11 interest and costs. Thereupon appellant filed a motion for a new trial, which motion was overruled and this appeal was then taken. Errors

assigned were that the court erred in its first, second, and third conclusions of law and in overruling appellant's motion for a new trial, but inasmuch as the evidence is not in the record, the error relating to overruling appellant's motion for a new trial will not be considered. The appellant, in excepting to the first, second, and third conclusions of law, admits that the facts specially found are in all things correct and we are, therefore, bound by the special findings made by the trial court.

There are but two kinds of bank deposits—special and general. A special account is one that is made for a special purpose and is the result of a special undertaking, and such a deposit creates the relationship of trustee or bailee on the part of the bank of such fund. On the other hand a general deposit creates the relationship of debtor and creditor between the bank and the depositor. It therefore follows that a special deposit is a deposit in a specific sum for a specific purpose and in this case the contract between Houtzer, the bank and the three creditors sets out the specific purposes of the special account and inasmuch as appellant knew that the special account was the result of a special undertaking a set-off could not be asserted by the bank under those circumstances. It has been frequently held that there is no right of general set-off against money placed in a bank as a special account for a certain purpose. *Wilson* v. *Dawson et al.* (1876), 52 Ind. 513; *Carter* v. *Martin* (1899), 22 Ind. App: 445, 53 N. E. 1066; *Shopert* v. *Indiana National Bank* (1907), 41 Ind. App. 474, 83 N. E. 515; *Continental National Bank* v. *McClure* (1915), 60 Ind. App. 553, 111 N. E. 191; Collier on Bankruptcy (Single Volume Ed. 1926) 1616; *Turkington* v. *First National Bank* (1922), 97 Conn. 303, 116 Atl. 214.

The second conclusion of law provides for interest at 6% per annum from date of demand, which was the 26th day of March, 1930. It is the law that interest at 6% per annum from date of demand to date of judgment may be had on money wrongfully or unreasonably witheld. *Hazzard* v. *Duke* (1878), 64 Ind. 220. *Killian* v. *Eigenmann* (1877), 57 Ind. 480. Therefore, it follows that conclusion of law number 3 herein is correct.

The judgment of the Huntington Circuit Court is affirmed.