BONHAM, ADMINISTRATOR *v.* CHOWNING, RECEIVER.

[No. 15,048. Filed March 29, 1935.]

*John C. Chaney,* for appellant.

*Walter F. Wood,* for appellee.

CURTIS, J.—The action in the trial court was upon a claim filed by the appellant William B. Bonham, as administrator of the estate of Mary E. Bonham, deceased, against appellee Lewis E. Chowning, receiver of Hymera State Bank, to have the appellant's claim of $1,377, with $32.13 interest, allowed as a preferred claim in the insolvency proceeding of the Hymera State Bank of Hymera, Indiana; and to have the appellant's claim of $180.00 with 4% interest allowed as a general claim in said insolvency proceedings. The appellee filed an answer in general denial to said claim.

The cause was then submitted to the court for trial without the intervention of a jury, resulting in a finding for the appellant against the appellee on said claim in the amount of $1,600.52 together with costs. The court made a further finding that all of said claim was a general claim and not entitled in any part to a preference. Judgment was rendered upon said finding and in accordance therewith.

The appellant seasonably filed a motion for a new trial which was overruled with an exception to the

appellant and this appeal prayed and perfected. The motion contains five causes or grounds, only number 3 of which we need consider for the reason that the appellant in his amended brief expressly waives each of said causes or grounds except the third, which is as follows: "That the decision is contrary to law and equity." The assignment of error contains nine specifications but the appellant in his amended brief says that his specifications 2 to 9 inclusive in said assignment raise no questions and "are hereby waived." We proceed therefore to a determination of the correctness of the ruling of the trial court on the motion for a new trial and in accordance with the express waivers of the appellant in his amended brief, give consideration only to the said third cause or ground of said motion above set out.

The claim was duly verified and filed November 29, 1932. Omitting the verification it is as follows:

"25288

## HYMERA STATE BANK
### of Hymera, Indiana

### PROOF OF CLAIM

"The undersigned William B. Bonham, Admr., says that the Hymera State Bank of Hymera, Indiana, is indebted to Mary E. Bonham, his decedent, in the sum of $1,600.53, as follows, to wit:

| | |
|---|---:|
| Balance due on checking account..............$ | |
| Balance due on savings account................ | |
| Amount due on time deposits..................... | |
| On Trust Fund of money left with Bank for purchase of 4% Liberty Loan Bonds being $1,530.00 less $153.00 paid thereon ................................................... | 1,377.00 |
| (with interest) ....................................... | 32.13 |
| Preferred to General Deposits................... | |
| Certificate of Deposit, $180.00 at 4%........ | 191.40 |
| Total amount claimed............................$1,600.53 | |

WILLIAM B. BONHAM, Admr."

At the outset it is to be noted that there is no dispute whatever as to the amount of he judgment. The dispute is only as to the item of $1,377.00 plus $32.13 interest thereon which went into the judgment as an item thereof; the contention of the appellant being that as to such item the court should have allowed it as a preferred claim.

The evidence fully establishes the following facts: That appellant's decedent, on March 5, 1929, had on deposit in the Hymera State Bank the sum of $1,700.00; that on said last mentioned date she went to the said bank and asked the president thereof, Charles Van Arsdall, to have said bank buy for her Fourth Liberty Loan Bonds in the sum of $1,530.00; that on behalf of said bank he at said time gave her a receipt of which the following is a copy:

"Hymera, Ind., Mar. 5, 1929.
Received from Mary E. Bonham
...............Fifteen Hundred Thirty...................Dollars
For Purchase of 4th L. Loan Bonds.
$1,530.00
THE HYMERA STATE BANK,
Chas. Van Arsdall."

In his evidence, Van Arsdall, as disclosed by the appellant's brief, said: "There was $1,700.00 on deposit at the bank at the time the receipt of $1,530.00 was given because there was that amount of money there that belonged to Mary E. Bonham. I know that by the records of the bank. The record shows that on March 5, 1929, Mary E. Bonham had on deposit in a fund designated "Deposit for the purchase of Government Bonds" the sum of $1,530.00. She also had as shown by the record of the certificates of deposits of said Hymera State Bank, Certificate of Deposit No. 16510 for the sum of $200.00. This receipt shows the $1,530.00. The receipt is correct. Mrs. Bonham wanted to purchase Liberty Bonds. The bank did not have

them on hands at the time, but she wanted to pay for them at that time and get them later. I never actually made any application to anybody for the purchase of those bonds. There never was any effort made at all about purchasing bonds for her on this deposit. This deposit in this form but not in that amount is still in the bank. The amount that is now in there for her is $1,530.00 less $153.00. The amount is $1,377.00.

On the next day after the above transaction the bank closed and that fact no doubt explains why no effort was made by the bank to purchase for the decedent the said Liberty Bonds.

A temporary receiver was appointed for said bank shortly after the above transaction, but the bank was re-opened again as a bank on July 1, 1930, with Van Arsdall as president. It remained open as a bank until September 6, 1932, when it was again closed, resulting in the present receivership.

The claim in the instant case, as previously stated, was-filed November 29, 1932, in the present receivership of said bank. In the meantime, after the first closing of the bank, which was on March 6, 1929, and before July 1, 1930, when it was re-opened as a bank, the appellant's decedent, along with other depositors, signed agreements of which the following is a copy.

"Plan of agreement between a committee of depositors and a committee of stockholders, for re-opening the Hymera State Bank, Hymera, Indiana.

"(1) The stockholders of the Hymera State Bank will make a voluntary contribution of $15,000.00.

"(2) A payment of 10% of all deposits will be made upon the opening of the bank.

"(3) One year's interest upon certificates of deposit will be paid within 90 days after opening the bank.

"(4) The remainder of deposits to be paid in full at such times and in such amounts as collections will justify, this to be determined by a com-

mittee of five selected by the depositors together with the board of directors of said bank.

"(5) The salary of each of the employees of the Hymera State Bank shall not exceed $50.00 per month until the depositors have been paid in full. The number of employees to be determined by the depositors' committee and the directors.

"(6) The directors and depositors' committee shall receive no pay for their services.

"(7) No dividends will be paid to the stockholders of the Hymera State Bank so long as this agreement is in operation.

"(8) It is contemplated that the Hymera State Bank will be open for business on or before July 1, 1930.

"(9) This agreement does not apply to new deposits made after the bank is opened. The undersigned depositors, each for himself or herself, in consideration of opening the Hymera State Bank, hereby agree to not draw any money standing to my credit in said bank at the time said bank was closed, except as specified in the above agreement.

MARY F. BONHAM."

There is evidence which in some instances conclusively proves, and in other instances tends very strongly to prove, that in accordance with the above plan between the stockholders and depositors of the bank, said bank was reopened as a bank on the first day of July, 1930, and remained open as a bank until it was closed again as heretofore pointed out on the sixth day of September, 1932, a period of time of a little over two years and two months; that on July 9, 1930, the appellant's decedent received the sum of $153.00 from said bank as a 10% payment to her on the $1,530.00, which, as previously pointed out, she had left with the bank with which to purchase Fourth Liberty Loan Bonds, leaving, as stated in the claim, the amount of $1,377.00 yet due thereon; that the said $153.00 was paid on said $1,530.00 claim by virtue of and under the terms of said agreement between the stockholders and depositors which we have heretofore set out; that the stockholders

paid in the said sum of $15,000.00 and that said agreement was carried out by all parties, insofar as possible, up to the time of the said second closing of the bank.

We think the evidence is ample to sustain the finding the court evidently made that after the said agreement between the stockholders and depositors became effective that the relation between the bank and the appellant's decedent was that of debtor and creditor and that the claim filed in the instant case was a general claim and not entitled to a preference. The provisions of said agreement, we think, negative the idea that the said decedent was anything more than a general creditor of the bank after she entered into the agreement. She received all of the consideration she voluntarily contracted for, up until the second closing of the bank. We do not believe that the appellant as her administrator can now avoid her said contract. If the said contract could be said to lack mutuality (and we think it is not so lacking) yet where, as in the instant case, it is acted upon and carried out by both parties it is a binding contract and that is especially true in the absence of fraud. See: *The Chicago and Atlantic Railway Company* v. *Derkes et al.* (1885), 103 Ind. 520, 3 N. E. 239; *Wolford* v. *Powers, Administratrix* (1882), 85 Ind. 294; *Mullin* v. *Hawkins* (1895), 141 Ind. 363, 40 N. E. 979; *The Louisville, New Albany and Chicago Railway Company* v. *Flannagon et al.* (1888), 113 Ind. 488, 14 N. E. 370.

If we are correct in the conclusions we have heretofore stated, then it becomes unimportant to determine the status of the parties that arose when the appellant's decedent had the transaction with the bank with reference to the purchase of said Liberty Bonds. We may say in passing, however, that we do not believe that a preferred claim has been established in any amount even if it were not for the said

agreement between the stockholders and depositors of said bank. No bonds were ever purchased by the bank, and, of course, none were turned over to the receiver. There has been no such tracing of the fund into the hands of the receiver as is required under the law applicable to the facts of the instant case. See *Mock* v. *Stultz et al.* (1933), 97 Ind. App. 138, 179 N. E. 567; *Crowder* v. *Abbott* (1931), 203 Ind. 59, 178 N. E. 860.

The decision of the trial court is not contrary to law. Judgment affirmed.

Kime, J., dissents.

### DISSENTING OPINION.

KIME, J.—I am compelled to dissent for the following reasons:

There are but two kinds of bank deposits—special and general. A special account is one that is made for a special purpose, and is the result of a special undertaking, and such a deposit creates the relationship of trustee or bailee on the part of the bank of such fund. On the other hand, a general deposit creates the relationship of debtor and creditor between the bank and the depositor. It, therefore, follows that a *special deposit is a deposit in a specific sum for a specific purpose.* (Our italics.) *City National Bank of Auburn* v. *Brink* (1934), 98 Ind. App. 275, 187 N. E. 689.

Where a general deposit is made it is credited to the depositor's account, and is subject to a *check* issued by him, or such deposit is evidenced by a certificate on time or demand. (Our italics.) The title to such deposit is vested in the bank and it becomes debtor of the depositor. When a bank takes a special deposit the relationship of trustee for the depositor comes into existence.

Where the money deposited is to be used for a *specifically designated purpose* it is frequently referred to and known as a "special deposit." 31 A. L. R. 472 annotation. (Our italics.)

"The law prescribes no particular formula for the contract involved in making a special deposit. Like all contracts it grows out of a mutual intention and understanding of the parties. The purpose and terms of the deposit may be explicitly stated, or the intention of the parties may be inferred from their declarations, considered in connection with their conduct and all the circumstances." 3 R. C. L. 517.

The deposit herein shows on its face that the $1,530.00 was to be used for the sole and specific purpose of purchasing for Mrs. Bonham 4th Liberty Loan bonds and no authority, direct or implied, was given to the bank to use the money for any other purpose. This amount could not be checked against in the ordinary course of business nor could any part of it be withdrawn without first breaking the contract. It was the obvious intention of the parties that the money so deposited was to be used for the specific purpose of buying the bonds. What if the purpose for which this fund had been deposited had been carried out, that is, the bonds purchased for Mrs. Bonham and while the bonds were in the possession of the bank, pending delivery to Mrs. Bonham, the bank went into the hands of a receiver, could it then be said that as to these bonds there existed no trust?

Since I am of the opinion that this is a trust fund there is no need to trace the funds in accordance with the recent opinions of this court since chapter 167 of the Acts of 1931 makes it unnecessary.

Further appellant's claim alleges that he is entitled to a preferred claim as to the $1,530.00 less $153.00, being the ten per cent. paid by the receiver, leaving $1,377.00 plus interest of $32.13 and entitled to a general claim as to the $180.00 plus interest, making a total of $191.40. Appellee's general denial put in issue only those facts which the plaintiff had alleged in his claim

and which he must prove in order to establish his case. The evidence discloses that the appellant proved the allegations of his claim and the general finding indicates that the court considered the so-called waiver as binding although the admission, in evidence, of the so-called waiver, if it was such a waiver, is of no avail, as a plea of waiver is a plea of confession and avoidance and must be specially pleaded. Such waiver must be pleaded by the party relying on it, and is not open as a defense under a general denial. *Evans* v. *The Queen Ins. Co.* (1892), 5 Ind. App. 199, 31 N. E. 843; *Nashua River Paper Co.* v. *Lindsay* (1922), 242 Mass. 206, 135 N. E. 358. A mere general denial does not authorize the introduction of evidence in support of any new matter. 49 C. J., section 1183, page 800, and cases there cited.

There is no showing that appellee moved to have the answer amended so as to include the pleas of waiver and estoppel. Proof without allegation is as impotent as allegation without proof. *Tatum* v. *Commercial Bank & Trust Co.* (1915), 193 Ala. 20, 69 So. 508; *Newton County* v. *Ellis* (1926), (Tex.), 285 S. W. 691. Only such facts as can be proven under the issues are properly before a court.

Appellee contends that because appellant's decedent accepted ten per cent. of this $1,530.00 under said so-called waiver that he, as her representative, is estopped from claiming that this $1,530.00 is a trust fund. Estoppel must be especially pleaded so that the question may be put in issue and the defense of estoppel is not available under a general denial. *Town of St. John* v. *Gerlach* (1926), 197 Ind. 289, 150 N. E. 771; *Webb* v. *John Hancock Mut. Life Ins. Co.* (1904), 162 Ind. 616, 69 N. E. 1006, 66 L. R. A. 632.